IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CREE, INC., <br><br> Plaintiff, <br><br> v. <br><br> SEMILEDS CORPORATION and HELIOS CREW CORP., <br><br> Defendants. | C.A. No. 10-866-PSD |

**PLAINTIFF'S OPENING BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS DEFENDANTS' INEQUITABLE CONDUCT
<u>COUNTERCLAIM AND AFFIRMATIVE DEFENSE</u>**

OF COUNSEL:

William F. Lee
Cynthia D. Vreeland
WILMER CUTLER PICKERING HALE
AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

Heath A. Brooks
WILMER CUTLER PICKERING HALE
AND DORR LLP
1801 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6000

Lynne A. Borchers
MYERS BIGEL
4140 Parklake Ave., Suite 600
Raleigh, NC 27612
(919) 854-1400

Dated: June 9, 2011

Frederick L. Cottrell, III (#2555)
Anne Shea Gaza (#4093)
Laura D. Hatcher (#5098)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square, 902 N. King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
gaza@rlf.com
hatcher@rlf.com

*Attorneys for Plaintiff Cree, Inc.*

RLF1 4067255v. 1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

I.     INTRODUCTION ...............................................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND.........................................................2

III.   LEGAL STANDARDS ......................................................................................................4

        A.     Inequitable Conduct Is Subject To A Heightened Materiality And Intent Standard ...4

IV.   ARGUMENT: DEFENDANTS' INEQUITABLE CONDUCT COUNTERCLAIM
       IS IMPROPERLY PLED AS A MATTER OF LAW ........................................................6

        A.     Defendants Failed to Properly Plead the "Who" Required by *Exergen* ......................6

        B.     Defendants Failed to Properly Plead the "What" and "Where" Required by
             *Exergen* .........................................................................................................................7

        C.     Defendants Failed to Properly Plead the "Why" and "How" Required by *Exergen* ...8

        D.     Defendants Failed to Plead Facts Sufficient to Give Rise to the Necessary Finding
             of Scienter .....................................................................................................................9

V.    CONCLUSION..................................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Digital Control Inc. v. Charles Mach. Works,*
    437 F.3d 1309 (Fed. Cir. 2006) ............................................................................... 8

*Exergen Corp. v. Wal-Mart Stores, Inc.,*
    575 F.3d 1312 (Fed. Cir. 2009) ......................................................................... *passim*

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.,*
    537 F.3d 1357 (Fed. Cir. 2008) ............................................................................... 6

*Therasense, Inc. v. Becton, Dickinson & Co.,*
    2011 WL 2028255 (Fed. Cir. 2011) ................................................................. *passim*

*Unique Indus., Inc. v. 965207 Alberta Ltd.,*
    722 F.Supp.2d 1 (D.D.C. July 22, 2009) .................................................................. 4

I.  **INTRODUCTION**

Pursuant to Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure, plaintiff Cree, Inc. ("Cree") moves to dismiss defendants SemiLEDs Corporation's, Helios Crew Corporation's, and SemiLEDs Optoelectronics Company, Ltd.'s (collectively, "Defendants") Eighth Defense and Third Counterclaim, both premised on vague, unsupported allegations of inequitable conduct.

The Federal Circuit has substantially heightened the standards for pleading and proving inequitable conduct in two recent cases. First, in *Exergen Corp. v. Wal-Mart Stores, Inc.*, the court made clear that, consistent with the heightened pleading standard of Rule 9(b), a party alleging inequitable conduct must set forth the ***"particularized factual bases"*** for the allegations – including "the ***specific who, what, when, where, and how***" of the alleged misconduct before the Patent Office, as well as "sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information ***with a specific intent to deceive the PTO***." 575 F.3d 1312, 1327-29 (Fed. Cir. 2009) (emphasis added). Most recently, in *Therasense, Inc. v. Becton, Dickinson & Co.*, the *en banc* court tightened the standards for proving inequitable conduct, noting that inequitable conduct charges are a "common litigation tactic" that "'has been overplayed,'" and "has plagued not only the courts but also the entire patent system" because these charges are "routinely brought on the 'slenderest grounds.'" 2011 WL 2028255, at *8-9 (Fed. Cir. 2011) (internal citations omitted).

Defendants' allegations of inequitable conduct do not even come close to meeting these heightened standards. Cree accordingly requests that the Court grant this motion, and dismiss Defendants' Eighth Defense and Third Counterclaim for inequitable conduct with prejudice.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Cree is a leading innovator in the design, development, and manufacture of LEDs (light-emitting diodes) and LED lighting. This case arises out Defendants' misuse of Cree's patented technologies.

On December 10, 2010, Cree filed a Second Amended Complaint, seeking relief for SemiLEDs Corporation's and Helios Crew Corporation's ongoing infringement of six Cree patents (the "patents-in-suit"), including U.S. Patent No. 7,737,459 (the "'459 patent"), entitled "High Output Group III Nitride Light Emitting Diodes." (*See* D.I. 15 [Plaintiffs' Motion for Leave to File Second Amended Complaint for Patent Infringement]).

On April 21, 2011, Cree filed a Third Amended Complaint, adding SemiLEDs Optoelectronics Co., Ltd. as a defendant. (*See* D.I. 60 [Stipulated Order on Cree's Motion for Leave to File Third Amended Complaint for Patent Infringement]).

On May 16, 2011, Defendants filed their Answer, Affirmative Defenses, and Counterclaims to Plaintiff's Third Amended Complaint, including both a defense and a counterclaim for declaratory judgment that the '459 patent is unenforceable because of inequitable conduct. (*See* D.I. 71 [Answer, Affirmative Defenses, and Counterclaims of SemiLEDs Corporation, Helios Crew Corporation, and SemiLEDs Optoelectronics Co., Ltd. to Plaintiff's Third Amended Complaint] at Eighth Defense, Third Counterclaim). Defendants premise their inequitable conduct allegations on a tortured argument that "Cree, the named inventors, and/or the patent attorneys who prosecuted the application" set out to "*deceive*" the Patent Office by intentionally withholding "information material to the patentability of the pending claims, including adverse decisions by another Examiner and the Board of Patent Appeals and Interferences in application no. 11/037,965, to which the '459 patent claims priority." *Id.* at Third Counterclaim, ¶ 15 (emphasis added).

Despite the seriousness of these charges, Defendants offer no explanation as to "who" was involved in this supposedly fraudulent scheme (other than attorney Phillip Summa), "what" particular claims and claim limitations in the '459 patent these adverse decisions would have impacted, "where" in the supposedly withheld decisions relevant information can be found, "why" this information is material and not cumulative of other information before the Patent Office, or "how" the '459 Examiner would have found it barred the '459 claims. Nor have Defendants plead any facts from which a court might reasonably infer that a specific individual knew the decisions contained information material to the '459 claims, knew that this information was not otherwise available to the Patent Office, and intentionally withheld this information with a ***specific intent to deceive*** the Patent Office.

In fact, although irrelevant to this motion which must be decided on the pleadings, there is no basis for any such allegations. The application that led to the '459 patent was a continuation-in-part of the '965 application. (*See* D.I. 1 [Complaint for Patent Infringement] at Ex. 1 ['459 patent] (listing Application No. 11/037,965 in "Related U.S. Application Data" on cover of patent)). Cree, its inventors, and its prosecuting attorney disclosed more than one hundred prior art references to the Patent Office in connection with the prosecution of the '459 patent, ***including*** the prior art references that were the focus of the adverse decisions during the prosecution of the '965 application. (*See id.* at Ex. 1 ['459 patent], pp. 1-2 (listing prior art considered by the Patent Office in "U.S. Patent Documents," "Foreign Patent Documents," and "Other Publications")). The Patent Examiner responsible for examining the '459 patent accordingly had the opportunity to review these prior art references himself, and to compare them to the '459 patent claims. The Patent Examiner made exactly such a comparison, and found that Cree was entitled to the '459 patent.

## III. LEGAL STANDARDS

### A. Inequitable Conduct Is Subject To A Heightened Materiality And Intent Standard

Inequitable conduct is a very serious charge that, if proven, bars enforcement of a patent. *Therasense*, 2011 WL 2028255, at *8. It is premised on the equitable principle that, if a party involved in the prosecution of a patent application intentionally sets out to deceive the Patent Office, the patent should not be enforceable. *Id.* at *4-9.

Because of the seriousness of the charge, and the substantial potential for abuse, the Federal Circuit has significantly increased the standards for pleading and proving inequitable conduct in two recent cases. In the first case, *Exergen Corp. v. Wal-Mart Stores, Inc.*, the court confirmed that, consistent with the heightened pleading standard of Rule 9(b), inequitable conduct is subject to strict pleading requirements. "A pleading that simply avers the substantive elements of inequitable conduct, without setting forth the ***particularized factual bases*** for the allegation, does not satisfy Rule 9(b)." 575 F.3d at 1326-27 (emphasis added). Instead, an accused infringer raising such a charge must identify "the ***specific who, what, when, where, and how*** of the material representation or omission committed before the PTO." *Id.* at 1327 (emphasis added). Moreover, because inequitable conduct requires intent to deceive the Patent Office, the accused infringer also must set forth "sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) ***withheld or misrepresented this information with a specific intent to deceive the PTO.***" *Id.* at 1328-29 (emphasis added).[1]

---

[1] Courts have stricken inequitable-conduct defenses where, as here, the "allegations do little more than parrot the elements of the inequitable conduct defense without supporting any element with a specific factual allegation." *Unique Indus., Inc. v. 965207 Alberta Ltd.*, 722 F.Supp.2d 1, 7 (D.D.C. July 22, 2009).

In the second case, *Therasense, Inc. v. Becton, Dickinson & Co.*, the Federal Circuit *en banc* significantly tightened the standards for finding both intent and materiality "***in order to redirect a doctrine that has been overused to the detriment of the public.***" 2011 WL 2028255, at *9 (emphasis added). Characterizing allegations of inequitable conduct as a "common litigation tactic" and a "litigation strategy," the Federal Circuit cautioned against the application of "reduced standards" for intent and materiality. *Id.* at *7-8. As the Federal Circuit made clear, inequitable conduct "'has been overplayed,'" "***has plagued not only the courts but also the entire patent system,***" and is "routinely brought on the 'slenderest grounds.'" *Id.* at *8-9 (internal citations omitted) (emphasis added). The Court further stated:

> [I]nequitable conduct charges cast a dark cloud over the patent's validity and paint the patentee as a bad actor. Because the doctrine focuses on the moral turpitude of the patentee with ruinous consequences for the reputation of his patent attorney, it discourages settlement and deflects attention from the merits of validity and infringement issues.
>
> * * *
>
> Inequitable conduct disputes also "increase[ ] the complexity, duration and cost of patent infringement litigation that is already notorious for its complexity and high cost." [internal citation omitted]
>
> [C]harging inequitable conduct has become a common litigation tactic. One study estimated that eighty percent of patent infringement cases included allegations of inequitable conduct.
>
> Perhaps most importantly, the remedy for inequitable conduct is the "atomic bomb" of patent law. . . . Unlike validity defenses, which are claim specific, *see* 35 U.S.C. § 288, inequitable conduct regarding any single claim renders the entire patent unenforceable.

*Id.* at *7-8.

To prevail on a claim of inequitable conduct, an accused infringer must now show: 1) that persons involved in prosecution of the patent "made a ***deliberate decision*** to withhold" material

information; and 2) the PTO "*would not have allowed a claim* had it been aware of the undisclosed [information];" such that 3) "the patentee acted with the *specific intent to deceive* the PTO." *Id.* at *9, 11 (emphasis added). A Court "may not infer intent solely from materiality," and specific intent to deceive must be "'the single most reasonable inference able to be drawn from the evidence.'" *Id.* at *10 (quoting *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008)). Moreover, the party alleging inequitable conduct must prove both intent and materiality by clear and convincing evidence. *Therasense*, 2011 WL 2028255, at *11.

## IV. ARGUMENT: DEFENDANTS' INEQUITABLE CONDUCT COUNTERCLAIM IS IMPROPERLY PLED AS A MATTER OF LAW

Defendants have not only failed to specify the "who, what, when, where, and how" required by *Exergen*, but also have failed to plead any facts whatsoever from which a court could reasonably infer that an individual involved in the prosecution of the '459 patent had knowledge of material, non-cumulative information that would have barred the '459 claims, and intentionally withheld this information with a specific intent to deceive the Patent Office. Defendants' Eighth Defense and Third Counterclaim should accordingly be dismissed.

### A. Defendants Failed to Properly Plead the "Who" Required by *Exergen*

As an initial matter, Defendants fail to identify "who," other than prosecuting attorney Phillip Summa, supposedly committed the inequitable conduct. Instead, Defendants' pleading accuses a broad, amorphous group of individuals of intentionally withholding material information:

> 15. On information and belief, the '459 patent is unenforceable due to inequitable conduct by ***Cree, the named inventors, and/or the patent attorneys who prosecuted the application that led to the issuance of the '459 patent*** because they failed to discharge their duty of candor to the USPTO during prosecution of the '459 patent....

(*See* D.I. 71 [Defendants' Counterclaims] at ¶ 15 (emphasis added)). This is exactly the type of generalized pleading rejected in *Exergen*. *Exergen*, 575 F.3d at 1329 (finding general reference to inequitable conduct by "Exergen, its agents and/or attorneys" insufficient).

### B. Defendants Failed to Properly Plead the "What" and "Where" Required by *Exergen*

Even more problematic, Defendants fail to identify the "what" or "where" of the supposed scheme to deceive the Patent Office. As the Federal Circuit confirmed in *Exergen*, the accused infringer must identify "***which [patent] claims*, and *which limitations*** in those [patent] claims, the withheld references are relevant to, and ***where in those references*** the material information is found – i.e., the '***what***' and '***where***' of the material omissions." *Id.* at 1329 (emphasis added). *Exergen* thus requires a party alleging inequitable conduct to identify and link the specific patent claims and claim limitations supposedly impacted by the inequitable conduct with the specific material information allegedly withheld from the Patent Office.

Again, Defendants have not even come close to doing so. Instead, Defendants merely include a number of vague references to the '965 prosecution history, which Defendants claim – without any explanation – include "numerous material adverse decisions" that were allegedly withheld from the Examiner of the '459 patent:

> 25.   During the prosecution of the '459 patent application, Cree, the named inventors, and the patent attorneys including Mr. Summa failed to apprise Examiner Louie [of the '459 application] of numerous material adverse decisions by Examiner Arena and the BPAI in the close-related '965 application, to which the '459 patent claims priority.

(*See* D.I. 71 [Defendants' Counterclaims] at ¶ 25). Defendants make no effort to even begin to explain how the rejection of a ***different*** patent application with ***different*** patent claims and ***different*** scope could possibly be relevant to the prosecution of the '459 claims – particularly where, as here, the '459 Examiner had before him the prior art that was the focus of those

- 7 -

rejections and, accordingly, was able to compare the '459 claims to that prior art for himself. Indeed, Defendants have not offered any explanation as to "what" '459 patent claims and claim limitations would have been impacted by these decisions, or "where" in the decisions the specific information or arguments that are supposedly material to the '459 claims can be found. Defendants' allegations are thus defective under *Exergen*.

### C. Defendants' Failed to Properly Plead the "Why" and "How" Required by *Exergen*

Defendants also fail to explain "'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims." *Exergen*, 575 F.3d at 1329-30. As the Federal Circuit has confirmed in multiple cases, prior art that is cumulative of other information already in front of the Examiner is ***not*** material. *See, e.g., Digital Control Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1319 (Fed. Cir. 2006) ("[A] withheld otherwise material prior art reference is *not* material for the purposes of inequitable conduct if it is merely cumulative to that information considered by the examiner.") (emphasis in original).

Again, Defendants' pleading makes no reference whatsoever to "why" the '459 Examiner would have found the supposedly withheld decisions material to the '459 claims; "why" the decisions were not cumulative to the more than one hundred prior art references already before him, ***including*** the prior art references that were the focus of the adverse decisions; or "why" the Examiner would have rejected the '459 claims based on those decisions. *See Therasense*, 2011 WL 2028255, at *11 (confirming that the accused infringer alleging inequitable conduct must prove that "the PTO would not have allowed a claim had it been aware of the undisclosed [information]."). Defendants also have failed to explain "how" the Examiner would have used any of this information in rejecting the '459 claims.

- 8 -

### D. Defendants Failed to Plead Facts Sufficient to Give Rise to the Necessary Finding of Scienter

Finally, but of critical significance, Defendants also fail to allege any facts to support their conclusory allegations that "Cree, the named inventors, and/or the patent attorneys who prosecuted the ['459] application" acted with the intent to deceive the PTO. (*See* D.I. 71 [Defendants' Counterclaims] at ¶ 15). Defendants pleading does not contain any specific factual allegations suggesting a "'deliberate decision to withhold ... known material [information]'" even though this is "a necessary predicate for inferring deceptive intent." *Exergen*, 575 F.3d at 1331 (internal citation omitted). As the *Exergen* court emphasized, inequitable conduct allegations must include facts creating a "reasonable inference of scienter." *Id.* at 1330. This includes not only "knowledge of the withheld material information," but also "***specific intent to deceive the PTO.***" *Id.* (emphasis added).

Defendants' only stated basis for inferring deceptive intent is that the prosecuting attorney was allegedly aware of the withheld information because he prosecuted the related '965 application. But *Exergen* directly rejected the idea that non-disclosure of information during prosecution of other patents – ***including related patents*** – gives rise to an inference of scienter. As the court explained:

> The mere fact that an applicant disclosed a reference during prosecution of one application, but did not disclose it during prosecution of a related application, is insufficient to meet the threshold level of deceptive intent required to support an allegation of inequitable conduct.

*Id.* at 1331.

In this case, an inference of deceptive intent is particularly unwarranted given that Cree, its inventors, and its prosecuting attorney disclosed to the '459 Examiner the prior art that was the focus of the supposedly withheld adverse decisions in the '965 prosecution. If they had truly

intended to deceive the Patent Office, they would not have disclosed this prior art. Defendants' bare-bones pleading – alleging an intent to deceive without identifying a single underlying fact warranting the inference that material information was deliberately withheld from the '459 Examiner – is thus insufficiently pled as a matter of law.

## V. CONCLUSION

For the foregoing reasons, Cree respectfully requests this Court grant its Motion to Dismiss pursuant to Rule 12(b)(6) and Rule 9(b), and dismiss Defendants' Eighth Defense and Third Counterclaim for inequitable conduct with prejudice.

| | |
|---|---|
| OF COUNSEL:<br><br>William F. Lee<br>Cynthia D. Vreeland<br>WILMER CUTLER PICKERING HALE<br>AND DORR LLP<br>60 State Street<br>Boston, MA 02109<br>(617) 526-6000<br><br>Heath A. Brooks<br>WILMER CUTLER PICKERING HALE<br>AND DORR LLP<br>1801 Pennsylvania Avenue NW<br>Washington, DC 20006<br>(202) 663-6000<br><br>Lynne A. Borchers<br>MYERS BIGEL<br>4140 Parklake Ave., Suite 600<br>Raleigh, NC 27612<br>(919) 854-1400<br><br>Dated: June 9, 2011 | */s/ Laura D. Hatcher*<br>Frederick L. Cottrell, III (#2555)<br>Anne Shea Gaza (#4093)<br>Laura D. Hatcher (#5098)<br>RICHARDS, LAYTON & FINGER, P.A.<br>One Rodney Square, 902 N. King Street<br>Wilmington, Delaware 19801<br>(302) 651-7700<br>cottrell@rlf.com<br>gaza@rlf.com<br>hatcher@rlf.com<br><br>*Attorneys for Plaintiff, Cree, Inc.* |

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2011, I caused to be served by electronic mail copies of the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Rodger D. Smith, II, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899-1347
rsmith@mnat.com

William H. Wright
Orrick, Herrington & Sutcliffe LLP
777 South Figueroa Street
Suite 3200
Los Angeles, CA 90017
wwright@orrick.com

Steven J. Routh
Sten A. Jensen
Orrick, Herrington & Sutcliffe LLP
1152 15th Street, NW
Washington DC 20005
srouth@orrick.com
sjensen@orrick.com

/s/ Laura D. Hatcher
Laura D. Hatcher (#5098)
hatcher@rlf.com