IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CREE INC.,<br><br>     Plaintiff,<br><br>     v.<br><br>SEMILEDS CORPORATION, HELIOS CREW CORP. and SEMILEDS OPTOELECTRONICS CO.,<br><br>     Defendants. | C.A. No. 10-866-PD |

**DEFENDANTS' ANSWERING BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' INEQUITABLE CONDUCT COUNTERCLAIM AND AFFIRMATIVE DEFENSE**

Rodger D. Smith II (#3778)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com

*Attorneys for Defendants*

OF COUNSEL:

William H. Wright
Orrick, Herrington & Sutcliffe LLP
777 South Figueroa Street
Suite 3200
Los Angeles, CA  90017
(213) 629-2020

Steven J. Routh
Sten A. Jensen
Orrick, Herrington & Sutcliffe LLP
1152 15th Street, NW
Washington DC  20005
(202) 339-8400

June 27, 2011

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

STATEMENT OF FACTS .....................................................................................................1

ARGUMENT ...........................................................................................................................5

    A.  Cree Has Not Met Its Burden Under Rule 12(b)(6)..................................................5

    B.  SemiLEDs Satisfied The Applicable Who, What, When, Where, and How Pleading
        Requirements.........................................................................................................7

           1.  SemiLEDs Satisfied the "Who" Requirement ..................................................7

           2.  SemiLEDs Satisfied the "What" Requirement .................................................8

           3.  SemiLEDs Satisfied the "When" Requirement ................................................8

           4.  SemiLEDs Satisfied the "Where" Requirement ...............................................9

           5.  SemiLEDs Satisfied the "How" Requirement ..................................................9

    C.  SemiLEDs' Pleading Satisfies the Scienter Requirement .........................................11

    D.  Alternatively, If the Court Finds an Insufficient Pleading, It Should Grant
        SemiLEDs Leave to Re-plead Its Inequitable Conduct Claim After Discovery.........13

CONCLUSION.......................................................................................................................14

# TABLE OF AUTHORITIES

*Abaxis, Inc. v. Cepheid,*
    No. 10-cv-02840, 2011WL 1044396 (N.D. Cal. Mar. 22, 2011)....................................14

*Abbott Diabetes Care, Inc. v. DexCom, Inc,*
    C.A. No. 05-590, 2006 WL 2375035 (D. Del. 2006)........................................................5

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937, 1940 (2009) ........................................................................................5

*Astrazeneca Pharmas. Lp, IPR v. Apotex Corp.,*
    2010 WL 5376310 (D. Del. 2010) ................................................................................3

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ....................................................................................................6

*BigBand Networks, Inc. v. Imagine Commc'ns, Inc.,*
    C.A. No. 07-351, 2010 WL 2898286 (D. Del. 2010)..................................................7, 9

*Exergen Corp. v. Wal-Mart Stores, Inc.,*
    575 F.3d 1312 (Fed. Cir. 2009) ............................................................................*passim*

*Ex parte Edmond,*
    No. 2008-6202 (B.P.A.I. Jan. 13, 2009) ............................................................2, 3, 11

*First Years, Inc. v. Munchkin, Inc.,*
    No. 3:07-cv-00558, 2008 WL 4682553 (W.D. Wisc. Feb. 5, 2008)..............................14

*Hishon v. King & Spalding,*
    467 U.S. 69 (1984) ......................................................................................................5

*In re Burlington Coat Factory Sec. Litig.,*
    114 F.3d 1410 (3d Cir. 1997)........................................................................................3

*Johnson Outdoors Inc. v. Navico, Inc.,*
    No. 2:10-cv-67, 2011 WL 798478 (M.D. Ala. Mar. 2, 2011) ................................8, 9, 11

*Leader Techs., Inc. v. Facebook, Inc.,*
    C.A. No. 08-862-LPS, 2010 WL 2545959 (D. Del. 2010)................................................8

*Lincoln Nat'l Life v. Jackson Nat'l Life Ins. Co.,*
    No. 1:07-cv-265, 2010 WL 1781013 (N.D. Ind. May 3, 2010) ..................................9, 10

*McKechnie Vehicle Components USA, Inc. v. Lacks Indus., Inc.*,
      No. 09-cv-11594, 2010 WL 4643081 (E.D. Mich. Nov. 9, 2010) .....................................7

*McKesson Information Solutions, Inc. v. Bridge Med., Inc.*,
      487 F.3d 897 (Fed. Cir. 2007) ..................................................................... 10, 11, 12, 13

*Minsung Int'l, Inc. v. Frontier Devices, Inc.*,
      No. 8:10-cv-1589, 2011 WL 1336395 (M.D. Fla. Apr. 7, 2011) .....................................14

*Therasense, Inc. v. Becton, Dickinson and Co.*,
      2011 WL 2028255 (Fed. Cir. 2011) ....................................................................... 10, 11

## INTRODUCTION

Defendants SemiLEDs Corporation, Helios Crew Corporation, and SemiLEDs Optoelectronics Co., Ltd. (collectively, "SemiLEDs") asserted in their Answer to Cree's Third Amended Complaint ("Answer") that United States Patent No. 7,737,459 (the "'459 patent") is unenforceable because representatives of Cree, Inc. ("Cree") withheld from the United States Patent & Trademark Office ("Patent Office") information that was critical to the examination of the '459 patent. There are six patents at issue in this case. SemiLEDs asserted an inequitable conduct defense/counterclaim only with respect to the '459 patent. In support of those claims, SemiLEDs described in detail who withheld material information, what information was withheld, when the material information was withheld, where in the withheld references the material document is contained, and how an examiner would have used this withheld information. In so doing, SemiLEDs complied in full with the pleading requirements applicable to an inequitable conduct defense/counterclaim. *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328 (Fed. Cir. 2009). SemiLEDs' Answer also explains the materiality of the information that was withheld from the Patent Office and identifies facts sufficient to support a reasonable inference that Cree withheld that information with the specific intent to deceive the Patent Office. Because the purpose of a motion to dismiss is not to test the merits of a pleading, but rather the sufficiency of its allegations, and because SemiLEDs pled its inequitable conduct claim with even more detail than is required by the applicable Federal Rules of Civil Procedure and Federal Circuit precedent, Cree's motion to dismiss must be denied.

## STATEMENT OF FACTS

The application that led to the '459 patent was filed on April 22, 2005, as a continuation-in-part of U.S. application no. 11/037,965 (the "'965 application"), which was filed

on January 18, 2005. (Answer, D.I. 71, at 12). The application that led to the '459 patent was assigned to Examiner Louie, while the '965 application was assigned to Examiner Arena. *Id.* As shown in Table 1 below, the '459 patent and the '965 application are both directed to a light emitting diode possessing a similar radiant flux and dominant wavelength. *Id.*

Table 1

| '459 Patent | '965 Application |
|---|---|
| 1. A light emitting diode having an area greater than 100,000 square microns and a radiant flux at 20 milliamps current of at least 29 milliwatts at its dominant wavelength between 390 and 540 nanometers. | 1. (as filed) A light emitting diode with advantageous output on a per unit area basis, said diode comprising: an area of 100,000 square microns or less; a forward voltage of less than 4.0 a radiant flux of at least 24 milliwatts at 20 milliamps drive current; and a dominant wavelength between about 395 and 540 nanometers. |

Significantly, the '965 application was rejected by the Patent Office in four separate office actions[1] (*see* Exhibits 1-4) and the rejection was affirmed on appeal by the Board of Patent Appeals and Interferences ("BPAI"). However, even though the two applications claim similar subject matter, none of the adverse decisions from either the Patent Office or the BPAI regarding the '965 application were cited to Examiner Louie during prosecution of the '459 patent. *Id.* at 12-14. Registered patent attorney Philip Summa prosecuted both the application that led to the issuance of the '459 patent and the '965 application. *Id.* at 12.

The arguments Mr. Summa made for the '965 application before the BPAI and before Examiner Arena relate to the same subject matter claimed in the '459 patent. *Ex parte*

---

[1]     The '965 application was also rejected in a non-final office action on September 30, 2010, however this was after the '459 patent had issued.

*Edmond*, No. 2008-6202, at 3 (B.P.A.I. Jan. 13, 2009) (attached hereto as Exhibit 5).[2]  For

example, under both 35 U.S.C. § 102(b) and § 103(a), the claims of the '965 application were

rejected at least in part in view of the Slater reference (U.S. Pub. No. 2002/0123164).  *Id.*

(D.I. 71, at 12-13).   These rejections were affirmed by the BPAI because "the structure of

Slater's diode substantially corresponds to the structure of Appellant's diode, Slater's diode

would inherently possess the properties recited in the appealed claims."   *Ex parte Edmond*,

No. 2008-6202, at 3.  Because Slater did not specifically disclose the size of the diode in several

claims, an additional reference was applied to reduce the size of the Slater diode.   *Id.* at 5.

Indeed, it was this alleged distinction related to the large chip size of Slater that formed the basis

for Mr. Summa's argument that the rejections were improper.  *Id.* at 4-5.

As shown in Table 1 above, claim 1 of the '459 patent recites similar features to

those the Patent Office and BPAI found to be inherently disclosed by Slater.  (D.I. 71, at 12).

Moreover, because the claimed area of the diode in the '459 patent is smaller than in the '965

application, the Patent Office would not have been required to utilize the additional reference

relied on to reject the '965 claims to reduce the area of the Slater reference.  *Id.* at 14.

The prosecution history of U.S. Application No. 12/796,365 (the "'365

application"), the divisional application to the '459 patent, provides further evidence of the

similarity of the claims in the '459 and '965 applications.  *Id.* at 13-14.  Table 2 below compares

claim 1 of the '365 application with claim 1 of its parent applications.

---

[2]   The Decision on Appeal and prosecution history for the '965 application were referenced
     in SemiLEDs' Answer and, therefore, may be considered in ruling on Cree's Motion to
     Dismiss.  *Astrazeneca Pharmas. Lp, IPR v. Apotex Corp.*, 2010 WL 5376310, at *9
     (D. Del. 2010) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d
     Cir. 1997)).

Table 2

| '459 Patent | '965 Application | '365 Application |
|---|---|---|
| 1. A light emitting diode having an area greater than 100,000 square microns and a radiant flux at 20 milliamps current of at least 29 milliwatts at its dominant wavelength between 390 and 540 nanometers. | 1. (as filed) A light emitting diode with advantageous output on a per unit area basis, said diode comprising: an area of 100,000 square microns or less; a forward voltage of less than 4.0 a radiant flux of at least 24 milliwatts at 20 milliamps drive current; and a dominant wavelength between about 395 and 540 nanometers. | 1. (as filed) A light emitting diode having an area of at least 100,000 square microns and an external quantum efficiency greater than 50 percent at 20 milliamps current at its dominant wavelength between 390 and 540 nanometers. |

As shown in this Table, the '365 application claims a light emitting diode with similar properties and area to the light emitting diode claimed in the '459 patent. (D.I. 71, at 13-14). In a non-final rejection of the '365 application, Examiner Arena (the same examiner assigned to the '965 application) rejected all claims *under the same references* cited in the rejection of the '965 application. *Id.* Accordingly, Examiner Arena concluded that the '965 references cited by the BPAI were invalidating prior art to the claims in the '365 application directed to a light emitting diode of an area greater than 100,000 microns – the same size diode claimed in the '459 patent. *Id.*

Because Mr. Summa was the prosecuting attorney for both the '459 patent and the '965 application, he was presumptively aware of the proceedings in both cases and the similarities of the applications. *Id.* at 12. Even so, Mr. Summa never apprised Examiner Louie of the adverse office actions and adverse decision by the BPAI from the related '965 application. *Id.* at 12-14. Further, as evidenced by the recent rejections from Examiner Arena in the '365

application, these material omissions during prosecution of the '459 application avoided a certain rejection of the claims.  *Id.*

## ARGUMENT

SemiLEDs pled its inequitable conduct defense and counterclaim with the required specificity under Rule 9(b).[3]  SemiLEDs provided specific details regarding *who* withheld material information, *what* information was withheld, *when* the material information was withheld, *where* in the withheld references the material information is contained, and *how* an examiner would have used this withheld information to reject the claims in the '459 patent.  *See Exergen Corp.*, 575 F.3d at 1327.  Moreover, the facts contained in SemiLEDs' pleading and in the prosecution histories of each of the three related patents lead to the reasonable inference that prosecuting attorney Philip Summa intentionally withheld material adverse decisions from the related '965 case, which would have lead the examiner of the '459 patent to reject all of the claims.  Because SemiLEDs has clearly met its pleading burden under Rule 9(b) and applicable Federal Circuit precedent, Cree's motion to dismiss must be denied.

### A.    Cree Has Not Met Its Burden Under Rule 12(b)(6)

A court should not dismiss a complaint unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Abbott Diabetes Care, Inc. v. DexCom, Inc.*, C.A. No. 05-590, 2006 WL 2375035, at *5 (D. Del. 2006).  Thus, in deciding a motion to dismiss, the factual allegations of the complaint must be accepted as true.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009).  In order to prevail, a moving party must show "beyond doubt that the plaintiff can

---

[3]    Because the legal standard is the same for affirmative defenses and counterclaims, and because the language of both pleadings in SemiLEDs' Answer is essentially the same, SemiLEDs' defenses and counterclaims are discussed jointly, with citations provided to SemiLEDs' Third Counterclaim for inequitable conduct.

prove no set of facts in support of his claim [that] would entitle him to relief." *Abbott Diabetes Care, Inc.,* 2006 WL 2375035, at *5. To survive a motion to dismiss for failure to state a claim under Rule12(b)(6), a counterclaim need not contain "detailed factual allegations," but must include enough facts "to raise a right to relief above the speculative level on the assumption that all allegations in the [counterclaim] are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

Under Rule 9(b), inequitable conduct must be asserted "with particularity [to] the circumstances constituting the fraud," but the scienter requirement may be "alleged generally." Fed. R. Civ. P. 9(b); *see Exergen Corp.*, 575 F.3d at 1328. In accordance with Rule 9(b), claims of inequitable conduct must include the "who, what, when, where and how of the material misrepresentations or omission committed before the PTO." *Id.* at 1328-29. "At the pleading stage the proponent of the inequitable conduct theory need only plead facts supporting a reasonable inference that a specific individual knew of the misrepresentation and had the specific intent to deceive the PTO." *Id.*

As explained below, SemiLEDs more than satisfied the applicable pleading standard by describing in detail the material information Mr. Summa withheld from the Patent Office and how that material information would have prevented the issuance of the '495 patent. Moreover, Cree has failed to show that the facts pled in SemiLEDs' counterclaim of inequitable conduct could never entitle it to relief. Instead, Cree has resorted to hollow assertions that SemiLEDs neglected to plead certain facts, even though SemiLEDs identified those allegedly missing facts in its counterclaim. In short, Cree has invited the Court to commit legal error by trying the case on the pleadings, rather than testing the sufficiency of SemiLEDs pleadings. Cree's motion applies the wrong standard under Rule 12(b)(6) and fails to show that no relief

could be granted to SemiLEDs under the facts set forth in its counterclaim.  Accordingly, Cree's motion must be denied.

**B.      SemiLEDs Satisfied the Applicable Who, What, When, Where, and How Pleading Requirements**

SemiLEDs' Answer addresses several instances of inequitable conduct in connection with the prosecution that led to the '459 patent.  Specifically, prosecuting attorney Philip Summa wrongfully failed to inform the examiner of the '459 patent of multiple adverse decisions received in a related and co-pending application.  Each separate act of withholding a material adverse decision constitutes a purposeful decision by Mr. Summa to deceive the Patent Office in order to obtain allowance of the '459 patent.  Taken as a whole, these acts represent a continuous string of inequitable conduct during the prosecution that led to the issuance of the '459 patent.  Because SemiLEDs' Answer alleged these facts in detail, it satisfies the "who, what, when, where, and how" requirements of *Exergen*.

**1.      SemiLEDs Satisfied the "Who" Requirement**

SemiLEDs' specific reference to Mr. Summa as the prosecuting attorney responsible for both the '459 patent and the '965 application satisfies the "who" requirement of *Exergen.  See, e.g., BigBand Networks, Inc. v. Imagine Commc'ns, Inc.*, C.A. No. 07-351, 2010 WL 2898286, at *4 (D. Del. 2010) (holding that a pleading that identifies the prosecuting attorney of the patent-in-suit satisfies the "who" requirements of *Exergen*); *McKechnie Vehicle Components USA, Inc. v. Lacks Indus., Inc.*, No. 09-cv-11594, 2010 WL 4643081, at *3 (E.D. Mich. Nov. 9, 2010) (same).  Significantly, the *Exergen* court found the pleading before it to be inadequate on the ground that it did not identify the prosecuting attorney who allegedly committed inequitable conduct.  *Exergen Corp.*, 575 F.3d at 1329.  In contrast, SemiLEDs' Answer specifically identifies prosecuting attorney Philip Summa as the individual who failed to

notify the Patent Office of the material adverse decisions in the co-pending parent case to the '459 patent.[4]   Accordingly, SemiLEDs' Answer does not contain the defect found to exist in *Exergen* and satisfies the "who" requirement.

### 2.      SemiLEDs Satisfied the "What" Requirement

SemiLEDs' Answer identifies the claim limitations to which the withheld references are relevant, and it therefore satisfies the "what" requirement of *Exergen*. Specifically, SemiLEDs explained that the claims of the '459 patent and the claims of the '965 application both "recite a light emitting diode that possesses certain properties and characteristics." (D.I. 71, at 12).  SemiLEDs also explained in its counterclaim that the relevant portions of the adverse decisions in the '965 application are those that refer or relate to a light emitting diode that possesses certain properties and characteristics similar to the claims of the '459 patent.  (D.I. 71, at 12-13).  Nothing more is required of SemiLEDs to satisfy the "what" requirement of *Exergen*.  *See, e.g., Johnson Outdoors Inc. v. Navico, Inc.*, No. 2:10-cv-67, 2011 WL 798478, at *4 (M.D. Ala. Mar. 2, 2011) (finding that general reference to withheld references and claim limitation satisfies the "what" requirement of *Exergen*).

### 3.      SemiLEDs Satisfied the "When" Requirement

*Exergen* requires that the pleading identify "when" the withholding occurred. *Exergen*, 575 F.3d at 1327.  SemiLEDs pled that the withholding of the adverse decision of the BPAI occurred at least between January 2009 and February 2010, during the prosecution of the

---

[4]      The fact that other groups of individuals were identified generally in SemiLEDs' Answer does not mandate dismissal under *Exergen*.  Indeed, these other individuals may also be found to have withheld material information once discovery has been taken on this issue. *See, e.g., Leader Techs., Inc. v. Facebook, Inc.*, C.A. No. 08-862-LPS, 2010 WL 2545959, at *6 (D. Del. 2010) (allowing pleadings to be amended to include claim of inequitable conduct when factual information was not discovered until after depositions and discovery).

'459 patent. (D.I. 71, at 12-13). Furthermore, SemiLEDs established that Mr. Summa had a duty to, but did not, disclose at least four adverse office actions from the '965 prosecution between January 2006 and February 2010. (D.I. 71, at 12-13). Accordingly, SemiLEDs has met its burden of pleading "when" the information was withheld. *See, e.g., BigBand*, 2010 WL 2898286, at *4 (finding that information alleged to be withheld "during prosecution" satisfies the standard).

### 4.      SemiLEDs Satisfied the "Where" Requirement

SemiLEDs properly identified specific portions of the withheld adverse decisions that were relevant to the claims of the '459 patent. Under *Exergen*, a pleading must refer to "where in those references the material information is found." *Exergen*, 575 F.3d at 1329. SemiLEDs specifically referred to the inherency rejection of the BPAI, affirming the rejections of Examiner Arena. (D.I. 71, at 13). The adverse office actions from Examiner Arena and the rejection from the BPAI with the Slater reference relate to the "properties and characteristics" that are similar to the claims of the '459 patent and the '965 application. (D.I. 71, at 13). Therefore, SemiLEDs' pleading satisfies the "where" requirement of *Exergen*.

### 5.      SemiLEDs Satisfied the "How" Requirement

SemiLEDs' pleading explained that an examiner would have rejected the claims of the '459 patent if the adverse BPAI decision and office actions had been presented to him. (D.I. 71, at 12-13). *Exergen* requires that a pleading allege "how" an examiner would have used the withheld material information to assess the patentability of the claims.[5] *Exergen*, 575 F.3d at

---

[5]      Contrary to Cree's assertion, *Exergen* does not require a separate "why" element. The Federal Circuit in *Exergen* held only that the "who, what, when, where, and how" of the material omission must be alleged to plead an inequitable conduct claim. *Exergen*, 575 F.3d at 1327. Numerous courts have found that a separate "why" requirement is not mandated by *Exergen*, and a claimant need not establish that the alleged omitted

1330.  Here, SemiLEDs is asserting the same type of inequitable conduct defense the Federal Circuit expressly approved in *McKesson Information Solutions, Inc. v. Bridge Med., Inc.*, 487 F.3d 897, 919 (Fed. Cir. 2007).  In that case, the court found that a contrary decision from another examiner "is clearly information that an examiner could consider important when examining an application."  *Id.*  Under *McKesson*, the claims of related applications need not even be substantially similar for information from one application to be material to the other.  *Id.* at 919-20.  Here, SemiLEDs' inequitable conduct claim is even stronger than the one asserted and approved of in *McKesson*.  As noted above in Table 2, the claims of the '459 patent and the '365 application are strikingly similar and share the common "properties and characteristics" recited in the BPAI decision on the '965 application.  SemiLEDs provided specific evidence showing how an examiner would have used the withheld adverse decisions of the BPAI and Patent Office to reject the claims in the '459 patent in the same way a different examiner rejected similar claims in the related '365 application.  (D.I. 71, at 13-14).  Thus, SemiLEDs' allegations that a different examiner rejected similar claims in the '365 application, *over the same references and with the same reasoning* applied by the BPAI in its rejection of the '965 application, proves that these withheld adverse decisions are but-for material.  *See Therasense, Inc. v. Becton, Dickinson and Co.*, 2011 WL 2028255, at *11 (Fed. Cir. 2011).  Clearly, if Examiner Louie had these adverse decisions in front of him, the claims of the '459 patent would have been rejected.  SemiLEDs has, therefore, met the "how" requirement of *Exergen*.

---

references are material and not cumulative at the pleading stage.  *See, e.g., Johnson Outdoors*, 2011 WL 798478, at *5 (noting that *Exergen* did not include a "why" requirement in its holding and it "is not an appropriate examination to conduct at the pleading stage."); *Lincoln Nat'l Life v. Jackson Nat'l Life Ins. Co.*, No. 1:07-cv-265, 2010 WL 1781013, at *6 (N.D. Ind. 2010) (finding that "a plain reading of the *Exergen* opinion strongly suggests there is no independent 'why' requirement.").

## C.     SemiLEDs' Pleading Satisfies the Scienter Requirement

Rule 9(b) allows for the scienter element of inequitable conduct to be pled generally.  *Exergen*, 575 F.3d at 1327.  It also allows for pleading on "information and belief" because "essential information lies uniquely within another party's control."  *Id.* at 1330.  Facts must be pled that lead to a reasonable inference of scienter, including knowledge of the withheld material information and specific intent to deceive the Patent Office.  *Therasense*, 2011 WL 2028255, at *9; *Exergen*, 575 F.3d at 1330.  However, "[b]ecause direct evidence of intent to deceive is rare, a district court may infer intent from indirect and circumstantial evidence."  *Therasense*, 2011 WL 2028255, at *10.  At the pleading stage, deceptive intent need not be the single most reasonable inference drawn from the evidence.  *Johnson Outdoors*, 2011 WL 798478, at *8 (distinguishing evaluating an inequitable conduct claim at the pleading stage with a trial on the merits).  It simply must be a plausible inference from the facts as alleged.  *Id.*

SemiLEDs pled facts showing that at least Mr. Summa had knowledge of the withheld adverse decisions and did not disclose those decisions because they would have affected the patentability determinations of the '459 patent.  SemiLEDs established the knowledge element through Mr. Summa's involvement in the prosecution of both the '459 patent and the '965 application.  (D.I. 71, at 12).  Mr. Summa drafted the responses to the adverse office actions and the appeal brief during prosecution of the '965 application.  *Id.*  He was also responsible for the prosecution of the '459 patent and drafted all correspondence to the Patent Office regarding the co-pending and related '459 patent.  *Id.*  Thus, SemiLEDs' pleading properly establishes the knowledge element of scienter.

SemiLEDs' pleading also alleges facts sufficient to infer an intent to deceive the Patent Office during the prosecution that led to the '459 patent.  Mr. Summa was aware of the

adverse decisions from the '965 application for over four years during the pendency of the '459 patent. Given the relatedness of the two applications and the similarities in the "properties and characteristics" claimed in each, Mr. Summa should have known of the impact these decisions from the '965 application would have had on the application that led to the '459 patent.

Increasing the importance of these adverse decisions is that the '965 rejections were based on the inherent teachings of the Slater reference as interpreted by Examiner Arena. As the Federal Circuit found in *McKesson*, the interpretation of a reference in one application is of critical importance to a different examiner in another related application. *McKesson*, 487 F.3d at 919. Especially in the context of an inherency rejection, where there is a heavy burden "on the Applicant to prove that the prior art product does not necessarily or inherently possess the characteristics attributed to the claimed product," Mr. Summa recognized the advantage gained by not disclosing these adverse decisions to Examiner Louie. *See Ex parte Edmond*, No. 2008-6202, at 3. Because the '459 patent was drafted as a continuation-in-part to the '965 application, with similar claimed subject matter, Mr. Summa had a duty to disclose this information, which would clearly be of importance to an examiner. *See McKesson*, 487 F.3d at 924 (finding intent to deceive when "the examiner of one application (Trafton) was not apprised of the adverse decisions by another examiner (Lev) in a closely-related application."). Mr. Summa failed that duty. As the Federal Circuit found in *McKesson*, a failure of this magnitude may lead to a finding of intent to deceive. *Id.* At the pleading stage, SemiLEDs has identified facts necessary to support an inference of an intent to deceive the Patent Office during the prosecution that led to the '495 patent.

Cree alleges that the only basis SemiLEDs has pled to infer deceptive intent is that Mr. Summa was only "allegedly" aware of the withheld information. (D.I. 79, at 9). It

12

further alleges that the failure to disclose "references" in related patent applications does not support intent. *Id.* First, it is beyond belief that a prosecuting attorney would not be "aware" of all adverse decisions received from the Patent Office for his pending applications. This argument is nonsensical, as Mr. Summa must have been aware of these adverse decisions because he filed responses to each of them. Second, SemiLEDs does not simply allege the failure to disclose references among related applications, but rather, the failure to disclose adverse decisions received in one application that would have seriously undermined the patentability of a related application. The Federal Circuit addressed Cree's argument in *McKesson* and rejected it in finding inequitable conduct. It should be rejected for the same reasons here.

      Cree also alleges that an inference of deceptive intent is unwarranted because Mr. Summa disclosed each of the references at issue in the withheld adverse decisions somewhere among the other hundred references. However, this argument was squarely rejected by the Federal Circuit in *McKesson*. 487 F.3d at 924. In *McKesson*, the applicant failed to apprise a different examiner of adverse decisions received in a related application. *Id.* Instead, the applicant sought to simply disclose only the "prior art cited in that [related] application." *Id.* The Federal Circuit expressly rejected this attempt to skirt the duty of candor and found intent to deceive the examiner. *Id.* For the same reasons, this Court should reject Cree's argument and find that SemiLEDs properly pled the requirement of scienter. Because SemiLEDs' pleading also meets the "who, what, when, where, and how" requirements of *Exergen*, it has properly pled inequitable conduct under Rule 9(b) and Cree's motion should be denied.

**D.      Alternatively, If the Court Finds an Insufficient Pleading, It Should Grant SemiLEDs Leave to Re-plead Its Inequitable Conduct Claim After Discovery**

If the Court were to find that SemiLEDs' Eighth Affirmative Defense and Third Counterclaim for inequitable conduct are not sufficiently pled, it should dismiss them without prejudice and with leave for SemiLEDs to re-plead its inequitable conduct claims at the close of discovery.    Numerous courts have found this to be the appropriate remedy if a claim of inequitable conduct was not sufficiently pled because leave to amend should be freely given. *See, e.g., Minsung Int'l, Inc. v. Frontier Devices, Inc.*, No. 8:10-cv-1589, 2011 WL 1336395, at *3 (M.D. Fla. Apr. 7, 2011);  *Abaxis, Inc. v. Cepheid*, No. 10-cv-02840, 2011WL 1044396, at *7 (N.D. Cal. Mar. 22, 2011); *First Years, Inc. v. Munchkin, Inc.*, No. 3:07-cv-00558, 2008 WL 4682553, at *3 (W.D. Wisc. Feb. 5, 2008).

## CONCLUSION

For the foregoing reasons, Cree's Motion To Dismiss Defendants' Inequitable Conduct Counterclaim And Affirmative Defense should be denied.

OF COUNSEL:

William H. Wright
Orrick, Herrington & Sutcliffe LLP
777 South Figueroa Street
Suite 3200
Los Angeles, CA  90017
(213) 629-2020

Steven J. Routh
Sten A. Jensen
Orrick, Herrington & Sutcliffe LLP
1152 15th Street, NW
Washington DC  20005
(202) 339-8400

June 27, 2011
4345661

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2011, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to:

> Frederick L. Cottrell, III, Esquire
> Anne Shea Gaza, Esquire
> RICHARDS, LAYTON & FINGER, P.A.

I further certify that I caused to be served copies of the foregoing document on June 27, 2011, upon the following in the manner indicated:

Frederick L. Cottrell, III, Esquire                      *VIA ELECTRONIC MAIL*
Anne Shea Gaza, Esquire
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE  19801

William F. Lee, Esquire                                        *VIA ELECTRONIC MAIL*
Cynthia D. Vreeland, Esquire
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA  02109

Heath A. Brooks, Esquire                                   *VIA ELECTRONIC MAIL*
WILMER CUTLER PICKERING HALE AND DORR LLP
1801 Pennsylvania Avenue, NW
Washington, DC  20006

Lynne A. Borchers, Esquire                              *VIA ELECTRONIC MAIL*
MYERS BIGEL
4140 Parklake Avenue, Suite 600
Raleigh, NC  27612


*/s/ Rodger D. Smith II*
_____
Rodger D. Smith II (#3778)