# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CREE, INC., <br><br> Plaintiff, <br><br> v. <br><br> SEMILEDS CORPORATION, HELIOS CREW CORP., and SEMILEDS OPTOELECTRONICS CO., <br><br> Defendants. | C.A. No. 10-866-PSD |

## PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS DEFENDANTS' INEQUITABLE CONDUCT COUNTERCLAIM AND AFFIRMATIVE DEFENSE

OF COUNSEL:

William F. Lee
Cynthia D. Vreeland
WILMER CUTLER PICKERING HALE
AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

Heath A. Brooks
WILMER CUTLER PICKERING HALE
AND DORR LLP
1801 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6000

Lynne A. Borchers
MYERS BIGEL
4140 Parklake Ave., Suite 600
Raleigh, NC 27612
(919) 854-1400

Dated: July 8, 2011

Frederick L. Cottrell, III (#2555)
Anne Shea Gaza (#4093)
Laura D. Hatcher (#5098)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square, 902 N. King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
gaza@rlf.com
hatcher@rlf.com

*Attorneys for Plaintiff Cree, Inc.*

RLF1 4489897v. 1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

I. INTRODUCTION .........................................................................................................1

II. ARGUMENT.................................................................................................................2

    A. *Therasense* Raised the Bar for Proving Inequitable Conduct.....................2

    B. Defendants Do Not Adequately Plead Materiality .......................................3

        1. Defendants Do Not Plead the "How" ...............................................3
        2. Defendants Do Not Plead the "What" or "Where" with Particularity..............6
        3. Defendants Do Not Plead the "Who" with Requisite Particularity .................7

    C. Defendants Do Not Adequately Plead Intent................................................8

    D. The Court Should Not Grant Leave to Amend ...........................................10

III. CONCLUSION............................................................................................................10

# TABLE OF AUTHORITIES

*Abaxis, Inc. v. Cepheid,*
   2011 WL 1044396 (N.D. Cal. 2011) ............................................................................4, 6

*Aerocrine AB v. Apieron Inc.,*
   2010 WL 1225090 (D. Del. 2009) ....................................................................................4

*American Calcar, Inc. v. American Honda Motor Co., Inc.,*
   ___ F.3d ___, 2011 WL 2519503 (Fed. Cir. 2011) ..........................................................9

*BigBand Networks, Inc. v. Imagine Communications, Inc.,*
   2010 WL 2898286 (D. Del. 2010) ....................................................................................7

*Dayco Prods., Inc. v. Total Containment, Inc.,*
   329 F.3d 1358 (Fed. Cir. 2003) .........................................................................................4

*Exergen Corp. v. Wal-Mart Stores, Inc.,*
   575 F.3d 1312 (Fed. Cir. 2009) ................................................................................*passim*

*Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.,*
   464 F.3d 1339 (Fed. Cir. 2006) .......................................................................................10

*King Auto., Inc. v. Speedy Muffler King, Inc.,*
   667 F.2d 1008 (CCPA 1981) ............................................................................................8

*Leader Techs., Inc. v. Facebook, Inc.,*
   2010 WL 2545959 (D. Del. 2010) ....................................................................................7

*McKesson Information Solutions, Inc. v. Bridge Medical, Inc.,*
   487 F.3d 897 (Fed. Cir. 2007) ..................................................................................*passim*

*Pressure Prods. Med. Supplies, Inc. v. Greatbatch Ltd.,*
   599 F.3d 1308 (Fed. Cir. 2010) .......................................................................................10

*Therasense, Inc. v. Becton, Dickinson and Company,*
   ___ F.3d ___, 2011 WL 2028255 (Fed. Cir. 2011) (en banc) ....................................*passim*

I.  INTRODUCTION

Defendants' opposition brief (Dkt. No. 89 ("Def's Br.")) confirms that their Eighth Defense and Third Counterclaim do not meet the requisite standard for pleading inequitable conduct. Defendants' brief focuses almost exclusively on out-of-date law, ignoring that the Federal Circuit has significantly heightened the standard for pleading and proving inequitable conduct, in both its *en banc* decision in *Therasense, Inc. v. Becton, Dickinson and Company*, --- F.3d ---, 2011 WL 2028255 (May 25, 2011), and its previous decision in *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009).

***First***, Defendants' brief confirms that they have not, and ***cannot***, plead facts that meet the heightened standard for materiality (*i.e.*, "but-for materiality"). Defendants offer no reasonable explanation as to "how" the PTO would have relied on the supposedly withheld decisions in order to reject the later claims—especially given that all the prior art underlying those decisions was already disclosed to the PTO. Nor do Defendants explain their failure to plead "what" claims and limitations are impacted, "where" in the undisclosed references the allegedly material information is found, or "who" (other than a single named prosecuting attorney among countless other unnamed individuals) allegedly committed the inequitable conduct.

***Second***, Defendants also cannot satisfy the pleading standard for intent. Defendants attempt to apply an old, incorrect legal standard—explicitly rejected in *Therasense*—that infers intent from materiality, and fail to allege ***any*** facts to support an inference that the prosecuting attorney withheld information he knew to be material, as the relevant standard requires.

***Finally***, recognizing the inadequacy of their pleading, Defendants mistakenly claim that they are entitled to amend their pleading—even though their request comes too late, and amendment would be futile in any event. Accordingly, the Court should grant Plaintiff's motion to dismiss and deny Defendants' belated, unsupported request for leave to amend their pleading.

-1-

RLF1 4489897v. 1

## II. ARGUMENT

### A. *Therasense* Raised the Bar for Proving Inequitable Conduct

The fundamental error of Defendants' opposition brief is its failure to appreciate that the Federal Circuit significantly heightened the bar for proving inequitable conduct in its recent *en banc* decision in *Therasense*. As the *Therasense* court unequivocally stated:

> While honesty at the PTO is essential, low standards for intent and materiality have inadvertently led to many unintended consequences, among them, increased adjudication cost and complexity, reduced likelihood of settlement, burdened courts, strained PTO resources, increased PTO backlog, and impaired patent quality. ***This court now tightens the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public.***

2011 WL 2028255, at *9 (emphasis added).

The *Therasense* court explicitly rejected the more lenient standards for materiality historically applied by the PTO, including the "reasonable examiner" standard relied upon in *McKesson Information Solutions, Inc. v. Bridge Medical, Inc.*, 487 F.3d 897, 913, 919-20 (Fed. Cir. 2007)—the principle case Defendants cite in support of their allegations of materiality (*see* Def's Br. at 10). Instead, *Therasense* "*adjust[ed]* ... the standard for materiality":

> This court holds that, as a general matter, the materiality required to establish inequitable conduct is but-for materiality. When an applicant fails to disclose prior art to the PTO, that ***prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art.***

*Id.* at *11 (emphases added). The Federal Circuit adopted this higher standard in order to "rein[] in" the inequitable conduct doctrine due to "adverse ramifications" from the "routine invocation of inequitable conduct in patent litigation." *Id.* at *14.

*Therasense* similarly "tighten[ed]" the standard for finding intent. *Id.* at *9. First, the court held that "the accused infringer must prove by clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a ***deliberate decision*** to withhold it." *Id.* at *9 (emphasis added). The intent to deceive must be the "***single most reasonable inference*** able

to be drawn from the evidence," and "must be sufficient to *require* a finding of deceitful intent." *Id.* at *10 (emphases added; internal quotation omitted). Second, the court explicitly rejected the "sliding scale" test that had previously been applied in cases like *McKesson. Compare id.* ("A district court should not use a 'sliding scale,' where a weak showing of intent may be found sufficient based on a strong showing of materiality, and vice versa."), *with McKesson*, 487 F.3d at 913 ("The court must then determine whether the questioned conduct amounts to inequitable conduct by balancing the levels of materiality and intent, with a greater showing of one factor allowing a lesser showing of the other."). Instead, *Therasense* held that "[p]roving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does *not* prove specific intent to deceive." *Therasense*, 2011 WL 2028255, at *10 (emphasis added).

## B. Defendants Do Not Adequately Plead Materiality

Defendants' opposition confirms that they have not and cannot adequately plead materiality, an element that even Defendants admit must be pled with particularity. (*See* Def's Br. at 6.) "To plead the circumstances of inequitable conduct with the requisite particularity under Rule 9(b), the pleading must identify the *specific* who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen*, 575 F.3d at 1328 (emphasis added). Defendants clearly fail several aspects of this materiality test.

### 1. Defendants Do Not Plead the "How"

As *Therasense* confirms, Defendants must plead with particularity factual allegations demonstrating "how" an Examiner would use the undisclosed references to come to no other conclusion than that the relevant claims should not have been granted (*i.e.*, "but-for materiality")[1]—

---

[1] Defendants' arguments about whether there is a "why" pleading requirement (Def's Br. at 9-10 n.9), based on Alabama and Indiana cases that predate *Therasense*, would appear to be wrong in
Footnote continued on next page

a requirement that even Defendants reluctantly acknowledge. (*See* Def's Br. at 10 ("Thus, SemiLEDs allegations ... prove[] that these withheld adverse decisions are but-for material.").) Defendants are unable to satisfy this pleading burden.

Defendants' pleading does not explain how the '459 Examiner would have used the rejections in the '965 prosecution to necessarily conclude that the '459 claims were not allowable. (*See* D.I. 71 at 11-14.) Defendants merely allege that the "claims of the '459 patent and the '965 application both recite a light emitting diode that possesses certain properties and characteristics." (*Id.* at 12.) However, the unremarkable fact that the '459 patent and '965 applications both concern light-emitting diodes does not show that they are similar, much less that the Examiner would find that "the PTO would not have allowed [the '459 claims] had it been aware of the ['965 claim rejections]."[2] *Therasense*, 2011 WL 2028255, at *11.

Defendants' attempt to overcome the shortcomings in their pleading by providing additional details in their opposition brief also fails. As an initial matter, it is undisputed that both prior art

---

Delaware. *See Aerocrine AB v. Apieron Inc.*, 2010 WL 1225090, at *9 (D. Del. March 30, 2009) ("***The requirement is that the pleading explain the "why" and the "how."*** (emphasis added)). Moreover, **Defendants' own cited case**, *Abaxis, Inc. v. Cepheid*, 2011 WL 1044396 (N.D. Cal. Mar. 22, 2011) (Def's Br. at 14), identifies a "why" pleading requirement as well. *See id.* at *5 ("Cepheid's pleading must contain allegations explaining both 'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims."). In any event, this dispute is irrelevant because Defendants have failed to show "how" the '459 Examiner would have used the '965 rejections to find the '459 claims disallowable, given the mutually exclusive subject matter in the two prosecutions, and that the underlying prior art was already before the '459 Examiner.

[2] Defendants again cite *McKesson*, this time for the proposition that any rejection in a related application is "clearly information that an examiner would consider important when examining the application." (Def's Br. at 10.) This point fails to adequately allege materiality for at least two reasons. First, Defendants are applying the "reasonable examiner" standard for materiality, which is no longer good law post-*Therasense*. Second, the quote from *McKesson* (which was itself quoting *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1368 (Fed. Cir. 2003)), was made in the context of "substantially similar" claims, whereas Defendants' bare allegations in their pleadings do not (and cannot) establish that the '459 and '965 claims are "substantially similar."

references on which the prior rejections were based were already before the '459 Examiner (D.I. 79 at 3), who nevertheless allowed the '459 claims. It is simply unreasonable to infer that the '459 Examiner would necessarily have changed his mind and disallowed the '459 claims simply by virtue of being presented with other evaluations of this prior art in the context of different claims in a different application. Moreover, it is also unreasonable to infer that the '965 rejections are but-for material because the claims rejected in the '965 application have size limitations that are ***mutually exclusive from the claims of the '459 patent***. Specifically, while the '965 application claims cover diodes with "an area of 100,000 square microns *or less*," the '459 claims cover diodes "having an area ***greater than*** 100,000 square microns." (Def's Br. at 2 (emphasis added); *see also* Def's Br., Ex. 5, at 2 ("claimed invention" of the '965 application was a "light emitting diode having ... an area of 100,000 square microns or less").)[3] Accordingly, there is simply no reason to believe that the Examiner would have found the '965 rejections important to determining the validity of the '459 claims, much less that he necessarily "would not have allowed [the '459 claims] had he been aware of the ['965 claim rejections]."

Defendants' references to the '365 divisional application are equally irrelevant. The '365 rejection occurred *after* the '459 patent was granted, and thus could not have been disclosed during the '459 prosecution. Nor does the '365 rejection show the materiality of the previous '965 rejections: the '365 Examiner—the ***same Examiner as for the '965 application*** (D.I. 71 at 12-14)—would undoubtedly have reached the same conclusion even if he did not have ***his own prior decision*** (and its appeal) before him. The allegedly withheld materials thus made no difference in

---

[3] Indeed, the very title of the '965 application—"High Output ***Small Area*** Group III Nitride LEDS" (D.I. 15, Ex. 1, at 8)—emphasizes the relatively small area of the covered '965 diodes, while the '459 diodes are required to be larger (with no upper boundary on their area).

the outcome of the '365 prosecution, rendering it irrelevant to whether Defendants have successfully pled inequitable conduct as to the '459 patent.

### 2. Defendants Do Not Plead the "What" or "Where" with Particularity

Defendants' opposition brief confirms their failure to allege materiality with the requisite specificity by failing to identify "what" claims and claim limitations are at issue, and "where" in the allegedly withheld references the material information is found. Defendants claim they have satisfied the "what" requirement by alleging that the relevant '459 claims are those that "recite a light emitting diode that possesses certain properties and characteristics," and that they have satisfied the "where" requirement by alleging that "the relevant portions of the adverse decisions in the '965 application are those that refer or relate to a light emitting diode that possesses certain properties and characteristics similar to the claims of the '459 patent." (Def's Br. at 8.)

Defendants' vague allegations gloss over the very information they are required to plead with specificity—*i.e.*, what are the relevant "properties and characteristics" that are at issue in the '459 claims, what '459 claims and limitations contain those particular "properties and characteristics," and where in particular are those "properties and characteristics" disclosed in the allegedly withheld references. *See Exergen*, 575 F.3d at 1329 (pleading fails "what" and "where" requirements "by failing to identify the particular claim limitations, or combination of claim limitations, that are supposedly absent from the information of record").[4] Indeed, the *Exergen* court found the "what" and "where" requirements lacking despite ***even more detail than Defendants have provided***. *See id.* at 1325-26, 1329 (pleading fails "what" and "where" requirements by

---

[4] Once again, even Defendants' own cited case, *Abaxis*, 2011 WL 1044396 (Def's Br. at 14), found allegations insufficient to meet the "what" requirement when the pleading only referenced "the claims of the patents in suit" and failed to "specify to what claims and what limitations in those claims the withheld references are relevant." *Id.* at *5.

alleging prior art was material "because it discloses a technique of scanning a radiation detector across a target to measure the maximum emitted radiation")

### 3. Defendants Do Not Plead the "Who" with Requisite Particularity

Defendants' opposition also confirms that they have failed to meet the "who" requirement for pleading inequitable conduct. Defendants admit that their pleading "generally" charges inequitable conduct against unspecified "groups of individuals" (Def's Br. at 8 n.4), but claim this vagueness is permissible because they also identify one specific individual—Philip Summa (*id.* at 7-8). However, that Defendants specifically name Mr. Summa does not forgive their charging inequitable conduct against countless other individuals (*i.e.*, "Cree, the named inventors, and/or the patent attorneys" (Dkt. No. 71 at 11-12)) ***without any specificity whatsoever***. *Leader Techs., Inc. v. Facebook, Inc.*, 2010 WL 2545959 (D. Del. 2010), cited by Defendants (Def's Br. at 8 n.4), is easily distinguishable because, in that case, the court allowed amendment only after the defendant had identified a reasonable factual basis to charge inequitable conduct against certain specific individuals, and did not include allegations against undefined "groups of individuals." In the instant case, however, Defendants insist on charging inequitable conduct against broad, amorphous groups of individuals without having any specific basis for doing so—*i.e.*, the very behavior that the particularity requirement for pleading inequitable conduct is designed to avoid.[5] Defendants should not be permitted to hurl fraud charges against individuals they cannot even name, much less ascribe particular behaviors to.

---

[5] Nor does *BigBand Networks, Inc. v. Imagine Communications, Inc.*, 2010 WL 2898286 (D. Del. 2010), support Defendants' argument that they have satisfied the "who" requirement. (*See* Def's Br. at 7.) *BigBand* concerned inequitable conduct allegations levied against two explicitly named prosecuting attorneys after the defendant discovered specific facts to support the allegations—***not*** inequitable conduct allegations against unspecified individuals.

## C. Defendants Do Not Adequately Plead Intent

Defendants have also failed to sufficiently plead that Mr. Summa (or anyone else) withheld the '965 rejections with a specific intent to deceive the PTO, as they admit they must (Def's Br. at 11). ***First***, Defendants have failed to plead any facts that could lead to a reasonable inference that Mr. Summa intended to deceive the PTO by withholding a reference when he "***knew*** that it was material." *Therasense*, 2011 WL 2028255, at *9 (emphasis added). As the Federal Circuit held in *Exergen*, a pleading does not support a reasonable inference of specific intent to deceive the PTO unless it alleges facts from which a court could reasonably infer that the prosecuting attorney ***believed he was wrongfully withholding*** the reference (*i.e.*, believed it was material and should have been disclosed). *Exergen*, 575 F.3d at 1328.[6] Although Defendants' pleading may support an

---

[6] To illustrate this point, *Exergen* discussed a trademark case, *King Auto., Inc. v. Speedy Muffler King, Inc.*, 667 F.2d 1008 (CCPA 1981), in which the registrant was accused of fraud on the PTO for filing a declaration claiming that, to the best of its knowledge, no third party had the right to use the mark 'SPEEDY MUFFLER KING' or a confusingly similar mark. *Exergen*, 575 F.3d at 1328. A competitor sought to cancel the mark by alleging, *inter alia*, that the registrant's statement was "known ... to be untrue" and made with "intent to deceive" the PTO because the registrant had previously obtained a trademark search report showing a third party's use of a confusingly similar mark, namely, "MUFFLER KING." *Id.* The *King* court found that the pleading failed to sufficiently allege an "intent to deceive," reasoning as follows:

> Even if the disclosures in the trademark search report supported appellant's contention that [the registrant] ***knew*** of the alleged third-party use of MUFFLER KING (and on this point we express on opinion), appellant's conclusory statement that [the registrant] ***knew*** its declaration to be untrue is not supported by a pleading of any facts which support [the registrant's] ***belief*** that the respective uses of MUFFLER KING and SPEEDY MUFFLER KING would be likely to confuse.

*Exergen*, 575 F.3d at 1328 (quoting *King*, 667 F.2d at 1011). The *Exergen* court then proceeded to endorse this reasoning as follows:

> Thus, the registrant's knowledge of MUFFLER KING, standing alone, was not enough to infer that the registrant also subjectively believed that the mark was confusingly similar to SPEEDY MUFFLER KING. The pleading thus failed to allege sufficient underlying facts to support a reasonable inference that the registrant knew its statement to be false or that it was intended to deceive. ... [A]lthough "knowledge" and "intent" may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of

Footnote continued on next page

- 8 -

inference that Mr. Summa knew of the '965 rejections, it contains no facts to support an inference that Mr. Summa believed these rejections were material to the '459 claims and should be disclosed. *See American Calcar, Inc. v. American Honda Motor Co., Inc.*, --- F.3d ---, 2011 WL 2519503, at *11 (Fed. Cir. June 27, 2011) ("On remand the court should make a specific finding on whether any of the three inventors ***knew that withheld information was material*** and whether they made a deliberate decision to withhold it." (emphasis added)). Indeed, because Mr. Summa had already disclosed all the prior art underlying the '965 rejections, and because the size limitations of the '459 claims were mutually exclusive of the '965 claims, the only reasonable inference from the facts alleged is that Mr. Summa ***did not believe*** the '965 rejections were material.

***Second***, the intent argument presented by Defendants in their opposition brief cannot rescue their inequitable conduct allegations. Defendants rely heavily on *McKesson*, suggesting that because *McKesson* establishes that rejections in co-pending applications are necessarily material,[7] Mr. Summa should have known the rejections were material. (Def's Br. at 12.) However, *Therasense* flatly rejected the proposition that intent could be inferred from materiality. *See Therasense*, 2011 WL 2028255, at *10 ("[A] district court may not infer intent solely from materiality."); *see also American Calcar*, 2011 WL 2519503, at *11 (vacating inequitable conduct judgment because it "bas[ed] its finding of intent significantly on the materiality of the [undisclosed reference]"); *Exergen*, 575 F.3d at 1331 ("[T]he mere fact that an applicant disclosed a reference during prosecution of one application, but did not disclose it during prosecution of a related application, is insufficient to meet the threshold level of deceptive intent required to support an

---

        underlying facts from which a court may reasonably infer that a specific individual ... withheld or misrepresented this information with a specific intent to deceive the PTO.

*Exergen*, 575 F.3d at 1328-29.

[7]    As explained above, *McKesson*'s materiality analysis, applying a less-stringent standard than but-for materiality to related applications, is no longer good law post-*Therasense*.

RLF1 4489897v. 1

allegation of inequitable conduct."). Accordingly, Defendants have not sufficiently pled a specific intent to deceive the PTO by Mr. Summa.

### D. The Court Should Not Grant Leave to Amend

Recognizing the deficiencies in their current pleading, Defendants claim that they should be granted leave to amend. However, the deadline for amending pleadings in this case was April 13, 2011 (Dkt. No. 52), nearly *three months ago*. Given the passing of this deadline, Defendants bear the burden of establishing "good cause" for their proposed amendment. *See Pressure Prods. Med. Supplies, Inc. v. Greatbatch Ltd.*, 599 F.3d 1308, 1319 (Fed. Cir. 2010) ("The more rigid standard of Rule 16(b) is applicable to motions filed after a scheduling order deadline has expired and requires a showing of good cause to file outside the deadline."). In their opposition brief, Defendants do not even attempt to meet this burden—nor could they. Accordingly, the Court should deny leave to amend.[8]

### III. CONCLUSION

For the foregoing reasons and those set forth in its opening brief, Cree respectfully requests that this Court grant its Motion to Dismiss and deny Defendants' request to amend.

---

[8] Even applying the more liberal standard for amendment, Defendants' request should be rejected. Unlike Defendants' cited cases (Def's Br. at 14), where the defendants' briefing suggested that they might be able to craft a proper pleading if given the opportunity to amend, Defendants' opposition brief in this case only confirms that amendment would be futile. *See Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.*, 464 F.3d 1339, 1353-54 (Fed. Cir. 2006) (upholding denial of leave to amend on basis that amendment would be futile). Even crediting the additional details in their opposition brief, Defendants cannot allege facts that lead to a reasonable inference of but-for materiality or specific intent to deceive the PTO.

| | |
|---|---|
| OF COUNSEL:<br><br>William F. Lee<br>Cynthia D. Vreeland<br>WILMER CUTLER PICKERING HALE<br>AND DORR LLP<br>60 State Street<br>Boston, MA  02109<br>(617) 526-6000<br><br>Heath A. Brooks<br>WILMER CUTLER PICKERING HALE<br>AND DORR LLP<br>1801 Pennsylvania Avenue NW<br>Washington, DC  20006<br>(202) 663-6000<br><br>Lynne A. Borchers<br>MYERS BIGEL<br>4140 Parklake Ave., Suite 600<br>Raleigh, NC  27612<br>(919) 854-1400<br><br>Dated: July 8, 2011 | */s/ Laura D. Hatcher*<br>Frederick L. Cottrell, III (#2555)<br>Anne Shea Gaza (#4093)<br>Laura D. Hatcher (#5098)<br>RICHARDS, LAYTON & FINGER, P.A.<br>One Rodney Square, 902 N. King Street<br>Wilmington, Delaware  19801<br>(302) 651-7700<br>cottrell@rlf.com<br>gaza@rlf.com<br>hatcher@rlf.com<br><br>*Attorneys for Plaintiff, Cree, Inc.* |

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2011, I caused to be served by electronic mail copies of the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Rodger D. Smith, II
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P. O. Box 1347
Wilmington, DE  19899-1347
rsmith@mnat.com

William H. Wright
Orrick, Herrington & Sutcliffe LLP
777 South Figueroa Street
Suite 3200
Los Angeles, CA 90017
wwright@orrick.com

Steven J. Routh
Sten A. Jensen
Orrick, Herrington & Sutcliffe LLP
1152 15th Street, NW
Washington DC 20005
srouth@orrick.com
sjensen@orrick.com

/s/ Laura D. Hatcher
Laura D. Hatcher (#5098)
hatcher@rlf.com