# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CREE, INC., <br><br> Plaintiff, <br><br> v. <br><br> SEMILEDS CORPORATION, HELIOS CREW CORP., and SEMILEDS OPTOELECTONICS CO., LTD. <br><br> Defendants. | Case No. 1:10-cv-00866-PSD |

## CREE, INC.'S THIRD NOTICE OF DEPOSITION OF DEFENDANTS

PLEASE TAKE NOTICE that Plaintiff Cree, Inc. ("Cree"), by and through its attorneys, will take the deposition upon oral examination of SemiLEDs Corporation and SemiLEDs Optoelectronics Co., Ltd. (collectively, "SemiLEDs") and Helios Crew Corporation ("Helios") (collectively, "Defendants") pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, commencing at 9:00 a.m. on Tuesday, July 19, at the Sheraton Hsinchu Hotel, 302 Taiwan Hsinchu County Jhubei City 光明六路東一段265號, Hsinchu, Taiwan R.O.C, or at such other time and place as agreed by counsel. The testimony shall be before a notary public or other person authorized to administer oaths. Testimony shall be recorded by stenographic means, and will also be videotaped.

Pursuant to Fed. R. Civ. P. 30(b)(6), Defendants are required to produce one or more officers, directors, managing agents, or other persons who are designated and consent to testify on their behalf as to each of the subject matters set forth in Schedule A, attached hereto. The deposition will proceed in accordance with the Federal Rules of Civil Procedure and will continue from day to day until completed, unless otherwise agreed.

Defendants are requested to identify in writing to Cree, on or before Thursday, July 14, 2011, the one or more officers, directors, managing agents, or other persons who consent to testify on their behalf and the subject matters on which each person will testify. You are invited to attend and cross-examine.

OF COUNSEL:

William F. Lee
Cynthia D. Vreeland
Ryann M. Muir
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
(617) 526-6000

Heath A. Brooks
WILMER CUTLER PICKERING
HALE AND DORR LLP
1801 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6000

Lynne A. Borchers
MYERS BIGEL
4140 Parklake Ave., Suite 600
Raleigh, NC 27612
(919) 854-1400

Dated: July 12, 2011

/s/ Laura D. Hatcher
Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Anne Shea Gaza (#4093)
gaza@rlf.com
Laura D. Hatcher (#5098)
hatcher@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
(302) 651-7700

*Attorneys for Plaintiff Cree, Inc.*

# DEFINITIONS

1. "Accused Products," as used in these Topics, means every model of LED and LED chip or component manufactured by, for, or on behalf of SemiLEDs or Helios, sold or imported by, for, or on behalf of SemiLEDs or Helios, or that is marked to indicate SemiLEDs or Helios as its source or with a SemiLEDs or Helios designation, including, but not limited to, those products identified in Cree's Third Amended Complaint and interrogatory responses, any products identified in the course of discovery, and any LEDs or LED chips or components that are currently being designed or manufactured by or for SemiLEDs or Helios or that may be imported or sold by or for SemiLEDs or Helios for the first time after filing of the Third Amended Complaint, including without limitation SemiLEDs' mvpLED and I-Do product families and Helios' P2 LED product family. "Accused Products" also includes any product that contains or incorporates an "Accused Product."

2. "And" and "or" shall be construed conjunctively or disjunctively, whichever makes these Requests more inclusive, and "any" shall mean each and every.

3. "Communication" means a transfer of information, written or oral, by any means whatsoever.

4. "Concerning" means and includes affecting, relating, relating to, constituting, dealing with, describing, embodying, evidencing, identifying, involving, providing a basis for, reflecting, regarding, respecting, stating, or in any manner whatsoever pertaining to that subject.

5. "Cree" means plaintiff/counterdefendant Cree, Inc. and each of its predecessors, present or former parents, subsidiaries, affiliated or controlled companies or joint ventures, their respective directors, officers, employees, agents, attorneys, accountants and any other person who has acted on or purported to act on any of their behalf.

6. "Data Sheets" means all data sheets that SemiLEDs or Helios have prepared for any of the Accused Products, including without limitation all data sheets that SemiLEDs or Helios have made available on their Internet sites.

7. "Defendants" or "you" means SemiLEDs and Helios, as those terms are defined herein.

8. "Document" is synonymous in meaning and equal in scope to this term as used in Fed. R. Civ. P. 34(a) and includes, without limitation, electronic or computerized data compilations, tangible things and any information-containing paper or other medium or materials, whether handwritten, printed, recorded, filmed, or produced by any other mechanical, chemical, or electronic process, whether or not asserted to be privileged or immune from discovery, and whether a draft, original, or copy, including any notes or marginal notations appearing on any document, including self-stick removable notes.

9. "Helios" means Helios Crew Corporation and each of its predecessors, present or former parents, subsidiaries, affiliated or controlled companies or joint ventures, their respective directors, officers, employees, agents, attorneys, accountants and any other person who has acted on or purported to act on any of their behalf (including, but not limited to, all distributors or agents authorized to distribute and/or sell Helios' products and all entities or agents under their control).

10. "Layer" means any material included in any of Defendants' LEDs, whether the material includes all or part of the width of the chip.

11. "LED" means light-emitting diode.

12. "Related to" and "relating to" mean and include affecting, concerning, constituting, dealing with, describing, embodying, evidencing, identifying, involving, providing

a basis for, reflecting, regarding, respecting, stating, or in any manner whatsoever pertaining to that subject.

13. "SemiLEDs" means SemiLEDs Corporation and SemiLEDs Optoelectronics Co., Ltd. collectively, and each of its predecessors, present or former parents, subsidiaries (including without limitation, defendant Helios Crew Corporation, Semi-Photonics Co., Ltd., and Silicon Base Development, Inc.), affiliated or controlled companies or joint ventures (including Xurui Guangdian Co., Ltd. (or China SemiLEDs)), their respective directors, officers, employees, agents, attorneys, accountants and any other person who has acted on or purported to act on any of their behalf (including, but not limited to, all distributors or agents authorized to distribute and/or sell SemiLEDs' or Helios' products and all entities or agents under their control).

14. The terms "company," "companies," "customer," and "customers" include these entities' predecessors, present or former parents, subsidiaries, affiliated or controlled companies or joint ventures, their respective directors, officers, employees, agents, attorneys, accountants and any other person who has acted on or purported to act on any of their behalf.

15. The terms "customer" and "customers" include within their meaning downstream customers.

16. Any reference to a company (*e.g.*, Phoseon, HTC, Lite-On, etc.) includes within that company's definition all of its predecessors, present or former parents, subsidiaries, affiliated or controlled companies or joint ventures, their respective directors, officers, employees, agents, attorneys, accountants and any other person who has acted on or purported to act on any of their behalf.

17. The use of the singular form of any word includes the plural and vice versa.

## **TOPICS**

1. Defendants' relationship with Nanoteco, including without limitation:

a.  The nature, frequency, and substance of Defendants' communications with and/or concerning Nanoteco; and

b.  Defendants' knowledge of Accused Products entering the United States in relation to Nanoteco, including without limitation direct sale of Accused Products by Defendants to Nanoteco in the United States, sales by Nanoteco of Accused Products in the United States, purchases by Nanoteco of Accused Products in the United States, and/or importation of Accused Products by Nanoteco into the United States.

2.  Defendants' relationship with LED Engin, including without limitation:

a.  The nature, frequency, and substance of Defendants' communications with and/or concerning LED Engin; and

b.  Defendants' knowledge of Accused Products entering the United States in relation to LED Engin, including without limitation direct sale of Accused Products by Defendants to LED Engin in the United States, sales by LED Engin of Accused Products in the United States, purchases by LED Engin of Accused Products in the United States, and/or importation of Accused Products by LED Engin into the United States.

3.  Defendants' relationship with Intematix, including without limitation:

a.  The nature, frequency, and substance of Defendants' communications with and/or concerning Intematix; and

b.  Defendants' knowledge of Accused Products entering the United States in relation to Intematix, including without limitation direct sale of Accused Products by Defendants to Intematix in the United States, sales by Intematix of Accused Products in the United States, purchases by Intematix of Accused Products in the United States, and/or importation of Accused Products by Intematix into the United States.

4.  Defendants' relationship with Phoseon, including without limitation:

a.  The nature, frequency, and substance of Defendants' communications with and/or concerning Phoseon; and

b.  Defendants' knowledge of Accused Products entering the United States in relation to Phoseon, including without limitation direct sale of Accused Products by Defendants to Phoseon in the United States, sales by Phoseon of Accused Products in the United States, purchases by Phoseon of Accused Products in the United States, and/or importation of Accused Products by Phoseon into the United States.

5.  Defendants' relationship with Innovation in Optics, including without limitation:

a. The nature, frequency, and substance of Defendants' communications with and/or concerning Innovation in Optics; and

b. Defendants' knowledge of Accused Products entering the United States in relation to Innovation in Optics, including without limitation direct sale of Accused Products by Defendants to Innovation in Optics in the United States, sales by Innovation in Optics of Accused Products in the United States, purchases by Innovation in Optics of Accused Products in the United States, and/or importation of Accused Products by Innovation in Optics into the United States.

6. Defendants' relationship with Lite-On, including without limitation:

a. The nature, frequency, and substance of Defendants' communications with and/or concerning Lite-On; and

b. Defendants' knowledge of Accused Products entering the United States in relation to Lite-On, including without limitation direct sale of Accused Products by Defendants to Lite-On in the United States, sales by Lite-On of Accused Products in the United States, purchases by Lite-On of Accused Products in the United States, and/or importation of Accused Products by Lite-On into the United States.

7. Defendants' relationship with JR Simplot, including without limitation:

a. The nature, frequency, and substance of Defendants' communications with and/or concerning JR Simplot; and

b. Defendants' knowledge of Accused Products entering the United States in relation to JR Simplot, including without limitation direct sale of Accused Products by Defendants to JR Simplot in the United States, sales by JR Simplot of Accused Products in the United States, purchases by JR Simplot of Accused Products in the United States, and/or importation of Accused Products by JR Simplot into the United States.

8. Defendants' relationship with HTC, including without limitation:

a. The nature, frequency, and substance of Defendants' communications with and/or concerning HTC; and

b. Defendants' knowledge of Accused Products entering the United States in relation to HTC, including without limitation direct sale of Accused Products by Defendants to HTC in the United States, sales by HTC of Accused Products in the United States, purchases by HTC of Accused Products in the United States, and/or importation of Accused Products by HTC into the United States.

9. Defendants' relationship with ProPhotonix, including without limitation:

-7-

RLF1 4781321v. 1

a. The nature, frequency, and substance of Defendants' communications with and/or concerning ProPhotonix; and

b. Defendants' knowledge of Accused Products entering the United States in relation to ProPhotonix, including without limitation direct sale of Accused Products by Defendants to ProPhotonix in the United States, sales by ProPhotonix of Accused Products in the United States, purchases by ProPhotonix of Accused Products in the United States, and/or importation of Accused Products by ProPhotonix into the United States.

10. Defendants' relationship with Stocker Yale, including without limitation:

    a. The nature, frequency, and substance of Defendants' communications with and/or concerning Stocker Yale; and

    b. Defendants' knowledge of Accused Products entering the United States in relation to Stocker Yale, including without limitation direct sale of Accused Products by Defendants to Stocker Yale in the United States, sales by Stocker Yale of Accused Products in the United States, purchases by Stocker Yale of Accused Products in the United States, and/or importation of Accused Products by Stocker Yale into the United States.

11. Defendants' relationship with DSEM, including without limitation:

    a. The nature, frequency, and substance of Defendants' communications with and/or concerning DSEM; and

    b. Defendants' knowledge of Accused Products entering the United States in relation to DSEM, including without limitation direct sale of Accused Products by Defendants to DSEM in the United States, sales by DSEM of Accused Products in the United States, purchases by DSEM of Accused Products in the United States, and/or importation of Accused Products by DSEM into the United States.

12. Defendants' relationship with Dominant, including without limitation:

    a. The nature, frequency, and substance of Defendants' communications with and/or concerning Dominant; and

    b. Defendants' knowledge of Accused Products entering the United States in relation to Dominant, including without limitation direct sale of Accused Products by Defendants to Dominant in the United States, sales by Dominant of Accused Products in the United States, purchases by Dominant of Accused Products in the United States, and/or importation of Accused Products by Dominant into the United States.

13. Defendants' relationship with Toshiba, including without limitation:

RLF1 4781321v. 1

a. The nature, frequency, and substance of Defendants' communications with and/or concerning Toshiba; and

b. Defendants' knowledge of Accused Products entering the United States in relation to Toshiba, including without limitation direct sale of Accused Products by Defendants to Toshiba in the United States, sales by Toshiba of Accused Products in the United States, purchases by Toshiba of Accused Products in the United States, and/or importation of Accused Products by Toshiba into the United States.

14. Defendants' relationship with Motorola, including without limitation:

    a. The nature, frequency, and substance of Defendants' communications with and/or concerning Motorola; and

    b. Defendants' knowledge of Accused Products entering the United States in relation to Motorola, including without limitation direct sale of Accused Products by Defendants to Motorola in the United States, sales by Motorola of Accused Products in the United States, purchases by Motorola of Accused Products in the United States, and/or importation of Accused Products by Motorola into the United States.

15. Defendants' relationship with RIM, including without limitation:

    a. The nature, frequency, and substance of Defendants' communications with and/or concerning RIM; and

    b. Defendants' knowledge of Accused Products entering the United States in relation to RIM, including without limitation direct sale of Accused Products by Defendants to RIM in the United States, sales by RIM of Accused Products in the United States, purchases by RIM of Accused Products in the United States, and/or importation of Accused Products by RIM into the United States.

16. Defendants' relationship with Samsung, including without limitation:

    a. The nature, frequency, and substance of Defendants' communications with and/or concerning Samsung; and

    b. Defendants' knowledge of Accused Products entering the United States in relation to Samsung, including without limitation direct sale of Accused Products by Defendants to Samsung in the United States, sales by Samsung of Accused Products in the United States, purchases by Samsung of Accused Products in the United States, and/or importation of Accused Products by Samsung into the United States.

17. Defendants' relationship with Nokia, including without limitation:

a.  The nature, frequency, and substance of Defendants' communications with and/or concerning Nokia; and

b.  Defendants' knowledge of Accused Products entering the United States in relation to Nokia, including without limitation direct sale of Accused Products by Defendants to Nokia in the United States, sales by Nokia of Accused Products in the United States, purchases by Nokia of Accused Products in the United States, and/or importation of Accused Products by Nokia into the United States.

18. Defendants' relationship with LG, including without limitation:

a.  The nature, frequency, and substance of Defendants' communications with and/or concerning LG; and

b.  Defendants' knowledge of Accused Products entering the United States in relation to LG, including without limitation direct sale of Accused Products by Defendants to LG in the United States, sales by LG of Accused Products in the United States, purchases by LG of Accused Products in the United States, and/or importation of Accused Products by LG into the United States.

19. Defendants' relationship with Apple, including without limitation:

a.  The nature, frequency, and substance of Defendants' communications with and/or concerning Apple; and

b.  Defendants' knowledge of Accused Products entering the United States in relation to Apple, including without limitation direct sale of Accused Products by Defendants to Apple in the United States, sales by Apple of Accused Products in the United States, purchases by Apple of Accused Products in the United States, and/or importation of Accused Products by Apple into the United States.

20. Defendants' relationship with Photon-L, including without limitation:

a.  The nature, frequency, and substance of Defendants' communications with and/or concerning Photon-L; and

b.  Defendants' knowledge of Accused Products entering the United States in relation to Photon-L, including without limitation direct sale of Accused Products by Defendants to Photon-L in the United States, sales by Photon-L of Accused Products in the United States, purchases by Photon-L of Accused Products in the United States, and/or importation of Accused Products by Photon-L into the United States.

21. Defendants' relationship with Maxspect, including without limitation:

a. The nature, frequency, and substance of Defendants' communications with and/or concerning Maxspect; and

b. Defendants' knowledge of Accused Products entering the United States in relation to Maxspect, including without limitation direct sale of Accused Products by Defendants to Maxspect in the United States, sales by Maxspect of Accused Products in the United States, purchases by Maxspect of Accused Products in the United States, and/or importation of Accused Products by Maxspect into the United States.

22. Defendants' relationship with Lumencor, including without limitation:

a. The nature, frequency, and substance of Defendants' communications with and/or concerning Lumencor; and

b. Defendants' knowledge of Accused Products entering the United States in relation to Lumencor, including without limitation direct sale of Accused Products by Defendants to Lumencor in the United States, sales by Lumencor of Accused Products in the United States, purchases by Lumencor of Accused Products in the United States, and/or importation of Accused Products by Lumencor into the United States.

23. Defendants' relationship with Henkel, including without limitation:

a. The nature, frequency, and substance of Defendants' communications with and/or concerning Henkel; and

b. Defendants' knowledge of Accused Products entering the United States in relation to Henkel, including without limitation direct sale of Accused Products by Defendants to Henkel in the United States, sales by Henkel of Accused Products in the United States, purchases by Henkel of Accused Products in the United States, and/or importation of Accused Products by Henkel into the United States.

24. Defendants' relationship with Code 3, including without limitation:

a. The nature, frequency, and substance of Defendants' communications with and/or concerning Code 3; and

b. Defendants' knowledge of Accused Products entering the United States in relation to Code 3, including without limitation direct sale of Accused Products by Defendants to Code 3 in the United States, sales by Code 3 of Accused Products in the United States, purchases by Code 3 of Accused Products in the United States, and/or importation of Accused Products by Code 3 into the United States.

25. Defendants' relationship with Bluworld Innovations, including without limitation:

a. The nature, frequency, and substance of Defendants' communications with and/or concerning Bluworld Innovations; and

b. Defendants' knowledge of Accused Products entering the United States in relation to Bluworld Innovations, including without limitation direct sale of Accused Products by Defendants to Bluworld Innovations in the United States, sales by Bluworld Innovations of Accused Products in the United States, purchases by Bluworld Innovations of Accused Products in the United States, and/or importation of Accused Products by Bluworld Innovations into the United States.

26. Defendants' relationship with Idaho Technology, including without limitation:

a. The nature, frequency, and substance of Defendants' communications with and/or concerning Idaho Technology; and

b. Defendants' knowledge of Accused Products entering the United States in relation to Idaho Technology, including without limitation direct sale of Accused Products by Defendants to Idaho Technology in the United States, sales by Idaho Technology of Accused Products in the United States, purchases by Idaho Technology of Accused Products in the United States, and/or importation of Accused Products by Idaho Technology into the United States.

27. Defendants' relationship with Rockwell Collins, including without limitation:

a. The nature, frequency, and substance of Defendants' communications with and/or concerning Rockwell Collins; and

b. Defendants' knowledge of Accused Products entering the United States in relation to Rockwell Collins, including without limitation direct sale of Accused Products by Defendants to Rockwell Collins in the United States, sales by Rockwell Collins of Accused Products in the United States, purchases by Rockwell Collins of Accused Products in the United States, and/or importation of Accused Products by Rockwell Collins into the United States.

28. Defendants' relationship with Everlight, including without limitation:

a. The nature, frequency, and substance of Defendants' communications with and/or concerning Everlight; and

b. Defendants' knowledge of Accused Products entering the United States in relation to Everlight, including without limitation direct sale of Accused Products by Defendants to Everlight in the United States, sales by Everlight of Accused Products in the United States, purchases by

Everlight of Accused Products in the United States, and/or importation of Accused Products by Everlight into the United States.

29. Defendants' relationship with EOI, including without limitation:

    a. The nature, frequency, and substance of Defendants' communications with and/or concerning EOI; and

    b. Defendants' knowledge of Accused Products entering the United States in relation to EOI, including without limitation direct sale of Accused Products by Defendants to EOI in the United States, sales by EOI of Accused Products in the United States, purchases by EOI of Accused Products in the United States, and/or importation of Accused Products by EOI into the United States.

30. Defendants' relationship with Advanced Photonics, including without limitation:

    a. The nature, frequency, and substance of Defendants' communications with and/or concerning Advanced Photonics; and

    b. Defendants' knowledge of Accused Products entering the United States in relation to Advanced Photonics, including without limitation direct sale of Accused Products by Defendants to Advanced Photonics in the United States, sales by Advanced Photonics of Accused Products in the United States, purchases by Advanced Photonics of Accused Products in the United States, and/or importation of Accused Products by Advanced Photonics into the United States.

31. Defendants' relationship with Excelitas, including without limitation:

    a. The nature, frequency, and substance of Defendants' communications with and/or concerning Excelitas; and

    b. Defendants' knowledge of Accused Products entering the United States in relation to Excelitas, including without limitation direct sale of Accused Products by Defendants to Excelitas in the United States, sales by Excelitas of Accused Products in the United States, purchases by Excelitas of Accused Products in the United States, and/or importation of Accused Products by Excelitas into the United States.

32. Defendants' relationship with JCS, including without limitation:

    a. The nature, frequency, and substance of Defendants' communications with and/or concerning JCS; and

    b. Defendants' knowledge of Accused Products entering the United States in relation to JCS, including without limitation direct sale of Accused Products by Defendants to JCS in the United States, sales by JCS of

Accused Products in the United States, purchases by JCS of Accused Products in the United States, and/or importation of Accused Products by JCS into the United States.

33. Defendants' relationship with Perkin Elmer, including without limitation:

   a. The nature, frequency, and substance of Defendants' communications with and/or concerning Perkin Elmer; and

   b. Defendants' knowledge of Accused Products entering the United States in relation to Perkin Elmer, including without limitation direct sale of Accused Products by Defendants to Perkin Elmer in the United States, sales by Perkin Elmer of Accused Products in the United States, purchases by Perkin Elmer of Accused Products in the United States, and/or importation of Accused Products by Perkin Elmer into the United States.

34. Defendants' relationship with Avago Technologies, including without limitation:

   a. The nature, frequency, and substance of Defendants' communications with and/or concerning Avago Technologies; and

   b. Defendants' knowledge of Accused Products entering the United States in relation to Avago Technologies, including without limitation direct sale of Accused Products by Defendants to Avago Technologies in the United States, sales by Avago Technologies of Accused Products in the United States, purchases by Avago Technologies of Accused Products in the United States, and/or importation of Accused Products by Avago Technologies into the United States.

35. Defendants' relationship with Amosense, including without limitation:

   a. The nature, frequency, and substance of Defendants' communications with and/or concerning Amosense; and

   b. Defendants' knowledge of Accused Products entering the United States in relation to Amosense, including without limitation direct sale of Accused Products by Defendants to Amosense in the United States, sales by Amosense of Accused Products in the United States, purchases by Amosense of Accused Products in the United States, and/or importation of Accused Products by Amosense into the United States.

36. Defendants' relationship with Enfis, including without limitation:

   a. The nature, frequency, and substance of Defendants' communications with and/or concerning Enfis; and

   b. Defendants' knowledge of Accused Products entering the United States in relation to Enfis, including without limitation direct sale of Accused

RLF1 4781321v. 1

Products by Defendants to Enfis in the United States, sales by Enfis of Accused Products in the United States, purchases by Enfis of Accused Products in the United States, and/or importation of Accused Products by Enfis into the United States.

37. Defendants' relationship with Light Engines, including without limitation:

   a. The nature, frequency, and substance of Defendants' communications with and/or concerning Light Engines; and

   b. Defendants' knowledge of Accused Products entering the United States in relation to Light Engines, including without limitation direct sale of Accused Products by Defendants to Light Engines in the United States, sales by Light Engines of Accused Products in the United States, purchases by Light Engines of Accused Products in the United States, and/or importation of Accused Products by Light Engines into the United States.

38. Defendants' relationship with Sunlite, including without limitation:

   a. The nature, frequency, and substance of Defendants' communications with and/or concerning Sunlite; and

   b. Defendants' knowledge of Accused Products entering the United States in relation to Sunlite, including without limitation direct sale of Accused Products by Defendants to Sunlite in the United States, sales by Sunlite of Accused Products in the United States, purchases by Sunlite of Accused Products in the United States, and/or importation of Accused Products by Sunlite into the United States.

39. Defendants' relationship with Solid UV, including without limitation:

   a. The nature, frequency, and substance of Defendants' communications with and/or concerning Solid UV; and

   b. Defendants' knowledge of Accused Products entering the United States in relation to Solid UV, including without limitation direct sale of Accused Products by Defendants to Solid UV in the United States, sales by Solid UV of Accused Products in the United States, purchases by Solid UV of Accused Products in the United States, and/or importation of Accused Products by Solid UV into the United States.

40. Defendants' relationship with Summit UV, including without limitation:

   a. The nature, frequency, and substance of Defendants' communications with and/or concerning Summit UV; and

b. Defendants' knowledge of Accused Products entering the United States in relation to Summit UV, including without limitation direct sale of Accused Products by Defendants to Summit UV in the United States, sales by Summit UV of Accused Products in the United States, purchases by Summit UV of Accused Products in the United States, and/or importation of Accused Products by Summit UV into the United States.

41. Defendants' relationship with Illumitex, including without limitation:

   a. The nature, frequency, and substance of Defendants' communications with and/or concerning Illumitex; and

   b. Defendants' knowledge of Accused Products entering the United States in relation to Illumitex, including without limitation direct sale of Accused Products by Defendants to Illumitex in the United States, sales by Illumitex of Accused Products in the United States, purchases by Illumitex of Accused Products in the United States, and/or importation of Accused Products by Illumitex into the United States.

42. Defendants' relationship with Medical Lighting Solutions, including without limitation:

   a. The nature, frequency, and substance of Defendants' communications with and/or concerning Medical Lighting Solutions; and

   b. Defendants' knowledge of Accused Products entering the United States in relation to Medical Lighting Solutions, including without limitation direct sale of Accused Products by Defendants to Medical Lighting Solutions in the United States, sales by Medical Lighting Solutions of Accused Products in the United States, purchases by Medical Lighting Solutions of Accused Products in the United States, and/or importation of Accused Products by Medical Lighting Solutions into the United States.

43. Defendants' relationship with Norlux, including without limitation:

   a. The nature, frequency, and substance of Defendants' communications with and/or concerning Norlux; and

   b. Defendants' knowledge of Accused Products entering the United States in relation to Norlux, including without limitation direct sale of Accused Products by Defendants to Norlux in the United States, sales by Norlux of Accused Products in the United States, purchases by Norlux of Accused Products in the United States, and/or importation of Accused Products by Norlux into the United States.

44. Defendants' relationship with OPTO Diode, including without limitation:

      a.      The nature, frequency, and substance of Defendants' communications with and/or concerning OPTO Diode; and

      b.      Defendants' knowledge of Accused Products entering the United States in relation to OPTO Diode, including without limitation direct sale of Accused Products by Defendants to OPTO Diode in the United States, sales by OPTO Diode of Accused Products in the United States, purchases by OPTO Diode of Accused Products in the United States, and/or importation of Accused Products by OPTO Diode into the United States.

45. Defendants' attempts to ascertain what Accused Products enter, or have entered the United States, including attempts to ascertain the customers who sell or import Accused Products into the United States or purchase Accused Products in the United States.

46. All indemnities given by Defendants, and/or requested by customers or potential customers, with respect to the Accused Products.

47. Defendants' methods and practices for tracking sales of Accused Products on a per customer basis, including without limitation tracking sales of Accused Products by bin number.

48. Defendants' methods and practices for tracking selling price, and gross and net revenues, sales, costs, and profits, for the Accused Products.

49. Defendants' profit margins for each Accused Product.

50. The chain of payments for Accused Products and/or royalties relating to Accused Products, including what payments Defendant entity or entities receive, the manner in which such payments are received, and the institution or account into which they are deposited.

51. The purpose and nature of Defendants' corporate presence in the United States, including without limitation SemiLEDs Corporation and Helios Crew Corporation.

52. Defendants' licensing activities, including without limitation:

      a.      Defendants' licenses concerning Accused Products and/or patents covering Accused Products;

b. Defendants' licenses concerning other companies' patents and/or products; and

c. Defendants' licensing policies and procedures.

53. The royalties paid to Defendants under any licenses of Defendants' Accused Products or patents.

54. All communications by Defendants with customers or potential customers concerning this litigation, including without limitation any communications concerning possible indemnities.

55. Defendants' market share for their Accused Products, including, to the extent Defendants know, their market share in each country in which they sell Accused Products, and their major competitors in each market.

56. The features of the Accused Products that Defendants market, or advertise to their customers, as superior to competitors' products.

RLF1 4781321v. 1

# CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2011, I caused to be served by electronic mail copies of the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Rodger D. Smith, II
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899-1347
rsmith@mnat.com

William H. Wright
Orrick, Herrington & Sutcliffe LLP
777 South Figueroa Street
Suite 3200
Los Angeles, CA 90017
wwright@orrick.com

Steven J. Routh
Sten A. Jensen
Orrick, Herrington & Sutcliffe LLP
1152 15th Street, NW
Washington DC 20005
srouth@orrick.com
sjensen@orrick.com

/s/ Laura D. Hatcher
Laura D. Hatcher (#5098)
hatcher@rlf.com