

Frederick L. Cottrell, III
302-651-7509
Cottrell@rlf.com

August 18, 2011

REDACTED PUBLIC
VERSION

**VIA E-FILING AND FACSIMILE**

The Honorable Paul S. Diamond
United States District Court
Eastern District of Pennsylvania
U.S. Courthouse
601 Market Street, Room #6613
Philadelphia, PA  19106-1710

> Re:  *Cree, Inc. v. SemiLEDs Corp. and Helios Crew Corp.*
> *C.A. No. 10-866-PD (D. Del.)*

Dear Judge Diamond:

On behalf of Plaintiff Cree, Inc., I write in response to the letter filed by Defendants SemiLEDs Corporation, SemiLEDs Optoelectronics Co., and Helios Crew Corp. (collectively, "SemiLEDs"), seeking to quash certain subpoenas[1] served by Cree. (*See* Dkt. No. 122.)  Cree's subpoenas were served at a reasonable time under the circumstances.  Indeed, although SemiLEDs complains about Cree's late issuance of the subpoenas, it ignores that its own late production of relevant emails was one of the primary causes for the delay in the subpoenas, and that the third parties' own delays in production of documents was a further cause for the delay in the deposition subpoenas.  The Court accordingly should deny the requested relief.  In the alternative, if the Court finds that Cree's subpoenas were late, then SemiLEDs' own third party subpoenas – yet to be enforced nearly three weeks after the close of discovery – also should be quashed.

Because the customer and underwriter subpoenas raise distinct issues, Cree has addressed them separately below.

---

[1]  SemiLEDs repeatedly references "fourteen subpoenas" even though Cree in fact subpoenaed ten entities in the last week of discovery.  The subpoenas to four of these third parties were combined document/deposition subpoenas (each of which SemiLEDs is counting as two subpoenas), while the subpoenas to the other six third parties were merely deposition subpoenas following up on the document subpoenas served earlier in discovery.

■ ■ ■

The Honorable Paul S. Diamond
Page 2
August 18, 2011

## CUSTOMER SUBPOENAS

SemiLEDs has asked the Court to quash subpoenas to six of its customers – Lite-On, Intematix, Code 3, Kingbright, Edison Opto, and Light Engines – all of which are directly relevant to the induced infringement and damages issues in the case.

SemiLEDs complains that Cree's subpoenas to these customers are intended to "Harass SemiLEDs and to Disrupt Its Business" and that Cree's intent is to "harass[ ] [SemiLEDs'] customers." (Defs' Letter at 3, 7.) SemiLEDs has provided no basis for these serious charges, and therefore they warrant no consideration by the Court. Indeed, Cree intentionally avoided issuing subpoenas to SemiLEDs' customers en masse early in the case, attempting instead to minimize the burden to third parties by waiting to review SemiLEDs' relevant documents and emails and to depose its relevant sales employees before burdening third parties with subpoenas that might turn out to be unnecessary. Moreover, there is no reason to believe these subpoenas are any more burdensome or "harassing" having been served in late July than they would have been if served several months earlier – and SemiLEDs has provided no such reason.

SemiLEDs further argues that the subpoenas are untimely. However, their issuance late in the discovery period was justified for at least the following reasons:

***First***, during the scheduling negotiations in this case, the parties agreed upon, and the Court subsequently ordered, a deadline for substantial completion of email discovery of May 16, 2011. (Dkt. No. 52.) Cree identified the SemiLEDs custodians for whom it was requesting email discovery on March 25, 2011. SemiLEDs nevertheless delayed its production of emails – including thousands of pages of relevant emails from the sales employees that Cree had identified in March – until June and July, 2011. In fact, SemiLEDs waited until July 14 to produce hundreds of emails from key sales personnel such as its former Vice President of Sales (Jack Yeh), its Regional Manager for sales to the United States (Camly Doan), and its Regional Managers for sales to Europe and parts of Asia (Tyler Sander and Wu Chen Tze). These late-produced emails included at least 116 documents (totaling 540 pages), referencing REDACTE|
REDACTED

SemiLEDs has offered no justification for these late-produced emails, which bear substantially on SemiLEDs' relationship with its customers and its knowledge of downstream customers (relevant to the indirect infringement and damages issues in the case).

---

[2]    Even after SemiLEDs' July 14 production and the late July depositions of its sales witnesses, SemiLEDs produced roughly 200 more emails (nearly 700 pages) from Camly Doan on ***the very last day of discovery***.

The Honorable Paul S. Diamond
Page 3
August 18, 2011

*Second*, in addition to SemiLEDs' delays in producing its relevant documents and emails, Cree's depositions of SemiLEDs' relevant sales employees also were delayed. Because of the burden of taking depositions in Taiwan, the parties' practice has been to conduct depositions of Cree witnesses in the United States on different weeks from depositions of SemiLEDs' witnesses in Taiwan. Cree identified the SemiLEDs sales employees that it intended to depose on July 1. Cree agreed to wait until late July to take these depositions, however, so that SemiLEDs could conduct depositions of Cree witnesses in the United States the week of July 11. Cree ultimately deposed two SemiLEDs Regional Managers (including the Regional Manager for United States sales, Camly Doan) and a former Vice President of Sales in Taiwan the week of July 18. SemiLEDs produced a large portion of these witnesses' relevant emails – along with other relevant sales documents that should have been produced by March 31 (non-email documents) or May 16 (emails) – shortly before these depositions. Cree's customer subpoenas served the week of July 25 were informed in large part by these depositions and documents.     REDACTED
REDACTED

*Third*, in addition to these delays by SemiLEDs, in some cases, there were also substantial delays by the relevant third parties in responding to earlier document subpoenas. Cree negotiated for months with Intematix and Lite-On (as well as the underwriters discussed below) regarding their production of documents, and these third parties were promising further document productions in July. Cree had hoped to be able to review the relevant productions, to see if depositions were warranted, before issuing follow-up deposition subpoenas. However, when Lite-On and Intematix still had not completed their document productions by late July, Cree had no choice but to issue deposition subpoenas to preserve its rights.

SemiLEDs contends that Cree could have issued the customer subpoenas earlier because SemiLEDs had provided a spreadsheet listing all of its direct sales in April. (Defs' Letter at 2.) However,                           REDACTED                           Moreover, it provided no insight into what any of these SemiLEDs' direct customers were doing with SemiLEDs' products, or into SemiLEDs' knowledge of whether any of these products were ultimately entering the United States (issues directly relevant to Cree's indirect infringement and damages claims). To learn this information, Cree had to rely primarily on SemiLEDs' emails, many of which were produced in mid to late July, and on depositions of SemiLEDs' sales witnesses, most of which occurred in late July. Cree's decision to wait for this further information – rather than issuing an even broader set of subpoenas to a larger number of SemiLEDs' customers – ultimately served to minimize the burden on third parties..

SemiLEDs further contends that Cree should have sought the Court's permission to enforce subpoenas after the close of fact discovery. In light of the dispute that has developed,

The Honorable Paul S. Diamond
Page 4
August 18, 2011

Cree agrees that seeking leave of the Court would have been the better choice. Cree believed at the time, however, that the parties had agreed in principle that third party discovery noticed before the end of discovery could be pursued beyond the discovery cutoff. As discussed further *infra*, after serving its own third party subpoenas in July, SemiLEDs' counsel sent an email requesting that Cree agree to permit it to enforce these subpoenas after the close of discovery. In response, Cree's counsel agreed to this request provided Cree be permitted to enforce its own third party subpoenas served prior to the close of discovery. (*See* Ex. 4 [Brooks Email].) This condition – which SemiLEDs raised no objections to until the last week of discovery – was more than justified by SemiLEDs' late production of documents and emails and by Cree's agreement to defer its depositions of SemiLEDs' sales employees until late July to accommodate SemiLEDs' depositions of Cree's employees.

## UNDERWRITER SUBPOENAS

SemiLEDs also requests that the Court quash deposition subpoenas to four underwriters – namely, Jeffries, Canaccord Genuity, Barclays, and Caris.[3] Cree issued document subpoenas to each of these four parties earlier in the case.

The parties appear to be in substantial agreement as to the first three of these subpoenas – Jeffries, Canaccord, and Barclays. Cree postponed issuing deposition subpoenas to these underwriters because they had not yet complied with the earlier document subpoenas. Cree ultimately issued deposition subpoenas during the last week of discovery to preserve its rights to authenticate any documents eventually produced by these entities. During the meet-and-confer process, Cree told SemiLEDs that the purpose of these subpoenas was to authenticate documents. In its letter to the Court, SemiLEDs confirms that it would be willing to stipulate to the authenticity of documents produced by these third parties. (Defs' Letter at 6-7.)

The circumstances for the fourth deposition subpoena – to Caris – are different. As the Court may recall from the technical tutorial, early in discovery, Caris produced a document REDACTED (Ex. 5 [Tutorial Tran.] at 73-74.) Cree specifically inquired by email as to whether Caris intended to produce this document, and Caris confirmed on March 24, 2011 that its production was indeed intentional. (Ex. 6 [Emails with Caris].) Nevertheless, on July 21, 2011 – nearly four months later and barely a week before the close of discovery – Caris took the position that the document and another similar document were privileged, and demanded that they be destroyed or returned. Cree is complying with this clawback request, but seeks to pursue the

---

[3]     The law firm of Myers Bigel Sibley and Sajovec, P.A., co-counsel in this matter, is handling the subpoenas of Jeffries, Canaccord, and Barclays. Accordingly, Lynne A. Borchers, Esq., of Myers Bigel is a co-signatory to this letter.

The Honorable Paul S. Diamond
Page 5
August 18, 2011

deposition of Caris to explore its belated assertion of privilege in addition to authenticating the documents produced by Caris.[4]

## SEMILEDS' SUBPOENAS

As set forth above, Cree believes that its subpoenas are reasonable under the circumstances, and that it should thus be allowed to complete them after the close of discovery. However, whatever the outcome of the Court's decision with respect to Cree's subpoenas, Cree requests that the parties be treated similarly as to whether they may enforce third party subpoenas after the close of discovery. Notably, SemiLEDs' requested relief – an order precluding *only* Cree from enforcing subpoenas -- would conveniently allow SemiLEDs to enforce its own subpoenas after the close of discovery.

During the last month of discovery, SemiLEDs issued three third party subpoenas (or, by SemiLEDs' method of separately counting document and deposition subpoenas, *six* third party subpoenas) to Philip Summa, Philips Lumileds, and Luminus. (*See* Exs. 7, 8, 9.) SemiLEDs noticed these depositions to occur on July 22, 18, and 20 respectively—*i.e.*, barely one week before the close of fact discovery. When Cree's counsel asked SemiLEDs' counsel whether these depositions would actually go forth on the noticed dates, SemiLEDs' counsel responded that he doubted so because "third parties always need extensions." Sure enough, on July 14, SemiLEDs' counsel requested via email that Cree agree that these third party subpoenas could be enforced after the discovery cutoff. In response, Cree's counsel indicated that it would not object, "provided Defendants will agree that any Cree third party depos noticed prior to the discovery cutoff may be taken after discovery closes, at a mutually agreeable time for the relevant parties." (Ex. 4 [Brooks Email].) SemiLEDs' counsel never responded to this email, although by filing this motion, SemiLEDs' lack of agreement is now clear.

To Cree's knowledge these depositions have not yet been scheduled nor have any documents been produced pursuant to the subpoenas. Accordingly, under SemiLEDs' characterization, it too has sought a "unilateral extension" of discovery by issuing third party subpoenas less than a month before the close of discovery and seeking to enforce them three weeks (and counting) after the close of discovery. SemiLEDs has not reached agreement with Cree to enforce these subpoenas after the close of discovery (Cree's agreement, as referenced above, was conditioned on similar treatment of both parties' subpoenas), nor has it sought leave from the Court to do so. SemiLEDs has offered no justification for why these subpoenas could

---

[4]     SemiLEDs contends that Cree should not be permitted to explore the basis for Caris's late-July clawback because SemiLEDs has not chosen to explore privilege clawbacks in depositions. (Defs' Letter at 6 n.2.) But SemiLEDs' litigation choices are not relevant to what Cree is entitled to do. Moreover, SemiLEDs has propounded numerous 30(b)(6) topics that have called for privileged information, and in response to Cree's suggestion that it need not provide a witness because the information is privileged, SemiLEDs has repeatedly insisted that it should be given a witness so that it can explore the basis and extent of the privilege. Cree has consistently provided witnesses in these circumstances, and the basis for deposing Caris as to its privilege claims is no different.

The Honorable Paul S. Diamond
Page 6
August 18, 2011

not have been served earlier in discovery at a time when they could safely have been enforced within the discovery period.[5]  Having waited until so late to do so, SemiLEDs has no one to blame but itself for the fact that, as SemiLEDs expected, these third parties could not comply with the subpoenas during the noticed timeframes.

Accordingly, if the Court grants SemiLEDs' request to quash Cree's third party subpoenas as untimely, Cree requests that the Court treat SemiLEDs similarly and prevent them form enforcing third party subpoenas after the close of discovery as well.

## CONCLUSION

Because Cree's subpoenas were reasonable under the circumstances, Cree requests that the Court deny SemiLEDs' motion, although Cree is willing to compromise on certain subpoenas as set forth above.  In the alternative, if the Court grants SemiLEDs' motion, Cree requests that SemiLEDs reciprocally be precluded from enforcing its third party subpoenas after the close of discovery.

Respectfully,

*/s/ Frederick L. Cottrell, III*

Frederick L. Cottrell, III (#2555)

FLC:kdm
cc:    All Counsel of Record (via email)

---

[5]    The Summa subpoena relates to SemiLEDs' inequitable conduct claims for the '459 patent, which SemiLEDs knew of no later than April 5, 2011, when it filed its inequitable conduct counterclaims focused on Mr. Summa's behavior. (Dkt. No. 51 at 11-13.)  The Philips Lumileds and Luminus subpoenas relate to prior art references that SemiLEDs is attempting to use to invalidate Cree's patents.  Because SemiLEDs' invalidity contentions in this case were due on January 31, 2011 (SemiLEDs provided them late on March 31, 2011), SemiLEDs clearly had ample time to issue subpoenas relating to prior art references much earlier in the case.