IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CREE INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) C.A. No. 10-866 (RGA) |
| SEMILEDS CORPORATION, | ) |
| HELIOS CREW CORP. and SEMILEDS | ) |
| OPTOELECTRONICS CO. LTD., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' ANSWERING BRIEF IN OPPOSITION TO PLAINTIFF'S RENEWED
MOTION TO DISMISS DEFENDANTS' INEQUITABLE CONDUCT
<u>COUNTERCLAIM AND AFFIRMATIVE DEFENSE</u>**

                                                                               MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                                                                               Rodger D. Smith II (#3778)
                                                                               1201 North Market Street
                                                                               P.O. Box 1347
                                                                               Wilmington, DE 19899
                                                                               (302) 658-9200
                                                                               rsmith@mnat.com

OF COUNSEL:                                                 *Attorneys for Defendants*

G. Hopkins Guy III
Michael F. Heafey
Jacob M. Heath
ORRICK, HERRINGTON & SUTCLIFF LLP
1000 Marsh Road
Menlo Park, CA 94025
(650) 614-7400

Sten A. Jensen
ORRICK, HERRINGTON & SUTCLIFF LLP
1152 15th Street, NW
Washington DC 20005
(202) 339-8400

February 3, 2012

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................... 1

FACTUAL BACKGROUND .................................................................................................... 4

ARGUMENT .............................................................................................................................. 8

    I.   SemiLEDs Satsified the *Exergen* Pleading Standard, Including the Intent Requirement ................................................................................................................. 9

    II.  Mr. Summa Had a Duty to Submit All Material Information .................................. 10

        A.  Cree's Arguments Against § 2001.06(b) Misstate the Rule ........................... 11

        B.  Cree's Reliance on §§ 609 and 707 is Misplaced ........................................... 13

CONCLUSION......................................................................................................................... 16

## TABLE OF AUTHORITIES

*Abbott Diabetes Care, Inc. v. DexCom, Inc,*
    C.A. No. 05-590, 2006 WL 2375035 (D. Del. 2006) ..................................................... 8

*ADT Corp. v. Lydall, Inc.,*
    159 F.3d 534 (Fed. Cir. 1998) .................................................................................. 14, 15

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009) ................................................................................................. 10

*Bone Care Int'l, LLC v. Pentach Pharm., Inc.,*
    741 F. Supp. 2d 854 (N.D. Ill. 2010) ........................................................................... 15

*Bone Care Int'l LLC v. Pentech Pharm, Inc.,*
    No. 08-cv-1083, 2010 WL 4102264 (N.D. Ill. Oct. 6, 2010) ....................................... 11

*eBay Inc. v. IDT Corp.,*
    No. 08-cv-4015, 2009 WL 2706395 (W.D. Ark. Aug. 24, 2009) ................................. 15

*Exergen Corp. v. Wal-Mart Stores, Inc.,*
    575 F.3d 1312 (Fed. Cir. 2009) .............................................................................. *passim*

*Golden Valley Microwave Foods v. Weaver Popcorn Co.,*
    837 F. Supp. 1444 (N.D. Ind. 1992) ............................................................................ 13

*Hishon v. King & Spalding,*
    467 U.S. 69 (1984) ......................................................................................................... 8

*Johnson Outdoors Inc. v. Navico, Inc.,*
    No. 2:10-cv-67, 2011 WL 798478 (M.D. Ala. Mar. 2, 2011) ........................................ 9

*McKesson Information Solutions, Inc. v. Bridge Med., Inc.,*
    487 F.3d 897 (Fed. Cir. 2007) ........................................................................... 12, 15, 16

*Onstar, LLC v. Micral, Inc.,*
    No. 1:08-CV-2047, 2010 U.S. Dist. LEXIS 34072 (N.D. Ohio Apr. 7, 2010) ........ 10, 12

*Sprint Commc'ns Co. v. Nuvox Commc'ns, Inc.,*
    No. 08-2047, 2009 WL 86565 (D. Kan. Jan 12, 2009) ................................................ 15

*Therasense, Inc. v. Becton, Dickinson and Co.,*
    649 F.3d 1276 (Fed. Cir. 2011) .................................................................................. 2, 9

*Wyeth v. Sandoz, Inc.,*
    570 F. Supp. 2d 815 (E.D.N.C. 2008) ......................................................................... 15

## INTRODUCTION

The most important aspect of Cree's Renewed Motion to Dismiss is what it does not say; nowhere does Cree allege that SemiLEDs failed to satisfy the who, what, when, where, or how pleading requirements of *Exergen*. Cree's sole argument is that prosecuting attorney Philip Summa did not have a duty to submit the material adverse office actions from the '965 application to the examiner of the '459 patent. Cree's argument rests on matters outside of the pleadings (which should not be considered on a motion to dismiss), and a strained interpretation of the Manual of Patent Examining Procedure ("MPEP"). Cree has not identified any section of the MPEP that absolves a prosecuting attorney's duty of submitting material adverse office actions from a copending related application.

Even after improperly reaching outside the pleadings, Cree fails to show that SemiLEDs did not plead the necessary facts to allege a claim of inequitable conduct. As explained below, SemiLEDs' amended pleading more than satisfies the *Exergen* standard, and Cree's Renewed Motion to Dismiss should therefore be denied:

### Who Withheld Material Information

"Cree's patent attorney, Mr. Philip Summa, failed to disclose to the Examiner adverse decisions by another Examiner and the Board of Patent Appeals and Interference in application no. 11/037,965 (the "'965 application"), to which the '459 patent claims priority" (D.I. 176, Amended Answer, Counterclaims at ¶ 15).

### What Information Was Withheld

"Mr. Summa failed to apprise Examiner Louie of numerous material adverse decisions by Examiner Arena and the BPAI in the closely-related '965 application, to which the '459 patent claims priority. If those adverse decisions had been disclosed, the '459 patent would not have issued" (D.I. 176, Amended Answer, Counterclaims at ¶ 29).

### When the Material Information Was Withheld

Mr. Summa committed inequitable conduct "[d]uring the prosecution of the '459 patent application between January 2009 and February 2010" (D.I. 176, Amended Answer, Counterclaims at ¶ 29).

### Where in the Withheld References the Material Information is Contained

"The rejections based on the Slater reference in the adverse office actions issued in the '965 application establish a prima facie case of unpatentability with respect to the claims of the '459 patent and are therefore but-for material" (D.I. 176, Amended Answer, Counterclaims at Par. 31). The Slater reference anticipates each element of claim 1, including the light emitting diode having a certain area, and the additional inherent properties and characteristics recited in claim 1 (D.I. 176, Amended Answer, Counterclaims at ¶¶ 24-28).

### How an Examiner Would Have Used This Withheld Information

Examiner Louie would have rejected all claims of the '459 patent based on the inherent teachings of the Slater reference (D.I. 176, Amended Answer, Counterclaims at ¶¶ 30-31).[1] "The Examiner of the reexamination proceeding for the '459 patent, having been made aware of the specific reasoning of the office actions in the '965 application, rejected all of the claims of the '459 patent over the same Slater reference and with the same reasoning as applied by Examiner Arena in the '965 application. The same rejections would have resulted in the '459 application if Mr. Summa had brought the adverse actions from the '965 application to the attention of Examiner Louie." *Id.* Because Examiner Louie would have rejected at least one

---

[1] Contrary to Cree's arguments to the Court at the December 21, 2011 hearing, whether all claims of the '459 patent would have been rejected is irrelevant. If an examiner would have rejected only a single claim based on the withheld material references, that fact alone is enough to render the entire '459 patent unenforceable. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1288 (Fed. Cir. 2011) ("[I]nequitable conduct regarding any single claim renders the entire patent unenforceable.").

2

claim of the '459 patent based on the withheld information, the information is but-for material (D.I. 176, Amended Answer, Counterclaims at ¶¶ 30-31).

**Intent**

Mr. Summa was aware of the adverse decisions and did not perform his known duty under the MPEP to disclose the material information (D.I. 176, Amended Answer, Counterclaims at Par. 29-32; MPEP §§ 2001.06(b) & 2004 (the relevant MPEP excerpts are attached hereto as Exhibit 7)). The MPEP specifically states that prosecuting attorneys must "not rely on the examiner of a particular application to be aware of other applications belonging to the same applicant or assignee." MPEP § 2004. Prosecuting attorneys must instead bring to the attention of the examiner "information within their knowledge as to other copending United States applications which are 'material to patentability.'" MPEP § 2001.06(b). The MPEP also distinguishes prior art from "other information" that may be material. MPEP § 2004. A prosecuting attorney must be "particularly careful that prior art *or other information in one application is cited to the examiner in other applications* to which it would be material." *Id.* (emphasis added). Accordingly, MPEP § 609 does not absolve a prosecuting attorney's duty to notify an examiner of adverse decisions from a copending application. *See* MPEP § 609 (relating only to prior art disclosure in an Information Disclosure Statement). Accordingly, "Mr. Summa did not disclose the adverse material office actions from the '965 application to Examiner Louie because he intended to deceive Examiner Louie and gain allowance of the '459 patent" (D.I. 176, Amended Answer, Counterclaims at ¶ 32).

## FACTUAL BACKGROUND

The application that led to the '459 patent was filed on April 22, 2005, as a continuation-in-part of U.S. application no. 11/037,965 (the "'965 application"), which was filed

3

on January 18, 2005 (D.I. 176, Amended Answer, Counterclaims, at ¶ 16). The application that led to the '459 patent was assigned to Examiner Louie, while the '965 application was assigned to Examiner Arena. *Id.* As shown in Table 1 below, the '459 patent and the '965 application are both directed to a light emitting diode possessing a similar radiant flux and dominant wavelength. *Id.* at ¶ 17.

Table 1

| '459 Patent | '965 Application |
|---|---|
| 1. A light emitting diode having an area greater than 100,000 square microns and a radiant flux at 20 milliamps current of at least 29 milliwatts at its dominant wavelength between 390 and 540 nanometers. | 1. (as filed) A light emitting diode with advantageous output on a per unit area basis, said diode comprising: an area of 100,000 square microns or less; a forward voltage of less than 4.0 a radiant flux of at least 24 milliwatts at 20 milliamps drive current; and a dominant wavelength between about 395 and 540 nanometers. |

Significantly, the Patent Office rejected the '965 application in four separate office actions[2] (*see* Exhibits 1-4) and those rejections were affirmed on appeal by the Board of Patent Appeals and Interferences ("BPAI"). However, even though the two applications claim similar subject matter, none of the adverse decisions from either the Patent Office or the BPAI regarding the '965 application were cited to Examiner Louie during prosecution of the '459 patent. *Id.* at ¶¶ 15, 29. Registered patent attorney Philip Summa prosecuted both the application that led to the issuance of the '459 patent and the '965 application. *Id.* at ¶ 18.

---

[2] The '965 application was also rejected in a non-final office action on September 30, 2010, however this was after the '459 patent had issued.

4

The arguments Mr. Summa made for the '965 application before the BPAI and before Examiner Arena relate to the same subject matter claimed in the '459 patent. *Ex parte Edmond*, No. 2008-6202, at 3 (B.P.A.I. Jan. 13, 2009) (attached hereto as Exhibit 5). For example, under both 35 U.S.C. § 102(b) and § 103(a), the claims of the '965 application were rejected at least in part in view of the Slater reference (U.S. Pub. No. 2002/0123164). *Id.* (D.I. 176, Amended Answer, Counterclaims, at ¶¶ 20, 24). These rejections were affirmed by the BPAI because "the structure of Slater's diode substantially corresponds to the structure of Appellant's diode, Slater's diode would inherently possess the properties recited in the appealed claims." Exhibit 5, *Ex parte Edmond*, No. 2008-6202, at 3. Because Slater did not specifically disclose the size of the diode in several claims, an additional reference was applied to reduce the size of the Slater diode. *Id.* at 5. Indeed, it was this alleged distinction related to the large chip size of Slater that formed the basis for Mr. Summa's argument that the rejections were improper. *Id.* at 4-5.

As shown in Table 1 above, claim 1 of the '459 patent recites similar features to those the Patent Office and BPAI found to be inherently disclosed by Slater (D.I. 176 at 12). Moreover, because the claimed area of the diode in the '459 patent is larger than in the '965 application, the Patent Office would not have been required to utilize the additional reference relied on to reject the '965 claims to reduce the area of the Slater reference. *Id.* at ¶¶ 24-28.

The prosecution history of U.S. Application No. 12/796,365 (the "'365 application"), the divisional application to the '459 patent, provides further evidence of the similarity of the claims in the '459 and '965 applications. *Id.* at ¶¶ 26-27, 31. Table 2 below compares claim 1 of the '365 application with claim 1 of its parent applications.

5

Table 2

| '459 Patent | '965 Application | '365 Application |
|---|---|---|
| 1. A light emitting diode having an area greater than 100,000 square microns and a radiant flux at 20 milliamps current of at least 29 milliwatts at its dominant wavelength between 390 and 540 nanometers. | 1. (as filed) A light emitting diode with advantageous output on a per unit area basis, said diode comprising: an area of 100,000 square microns or less; a forward voltage of less than 4.0 a radiant flux of at least 24 milliwatts at 20 milliamps drive current; and a dominant wavelength between about 395 and 540 nanometers. | 1. (as filed) A light emitting diode having an area of at least 100,000 square microns and an external quantum efficiency greater than 50 percent at 20 milliamps current at its dominant wavelength between 390 and 540 nanometers. |

As shown in this Table, the '365 application claims a light emitting diode with similar properties and area to the light emitting diode claimed in the '459 patent. *Id.* at ¶ 26. In a non-final rejection of the '365 application, Examiner Arena (the same examiner assigned to the '965 application) rejected all claims *under the same references* cited in the rejection of the '965 application. *Id.* Accordingly, Examiner Arena concluded that the '965 references cited by the BPAI were invalidating prior art to the claims in the '365 application directed to a light emitting diode of an area greater than 100,000 microns – the same size diode claimed in the '459 patent. *Id.*

The '459 patent is subject to an *inter partes* reexamination proceeding (No. 95/001,627, granted on July 28, 2011). *Id.* at ¶ 28. In the reexamination proceeding, all claims of the '459 patent have been rejected, at least in part, over the same Slater reference used to reject the claims of the '965 application and the '365 application. *Id.* The July 26, 2011 office action in the reexamination proceeding (attached hereto as Exhibit 6) states that "[s]ince Slater discloses a substantially identical light emitting diode as claimed (that is to say, a light emitting

6

diode with an area greater than 100,000 square microns), it is presumed to have the same properties." *Id.* The Patent Office has now recognized that it is completely inconsistent for the Office to have allowed the '459 patent to issue while rejecting the '965 and '365 applications. *Id.* Indeed, the Slater reference is even stronger against the '459 application than it was against the '965 application because both Slater and the '459 application disclose a light emitting diode with an area *greater* than 100,000 square microns. *Id.* As the Patent Office correctly concluded in the reexamination proceeding, the other properties and characteristics of an LED disclosed in claim 1 of the '459 patent are inherently present in the structure disclosed by Slater. *Id.* The Patent Office decision in the reexamination proceeding provides further evidence that the adverse office actions in the '965 application were but-for material with respect to the claims in the '459 application. *Id.*

Because Mr. Summa was the prosecuting attorney for both the '459 patent and the '965 application, he was presumptively aware of the proceedings in both cases and the similarities of the applications. *Id.* at ¶¶ 29-32. Even so, Mr. Summa never apprised Examiner Louie of the adverse office actions and adverse decision by the BPAI from the related '965 application. *Id.* Further, as evidenced by the recent rejections in the reexamination proceedings and the rejections from Examiner Arena in the '365 application, these material omissions during prosecution of the '459 application avoided a certain rejection of the claims. *Id.*

## ARGUMENT

SemiLEDs adequately pled its inequitable conduct defense and counterclaim with the required specificity under Rule 9(b) and *Exergen*. A court should not dismiss a complaint unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Abbott*

7

*Diabetes Care, Inc. v. DexCom, Inc,* C.A. No. 05-590, 2006 WL 2375035, at *5 (D. Del. 2006). Under Rule 9(b), inequitable conduct must be asserted "with particularity [to] the circumstances constituting the fraud," but the scienter requirement may be "alleged generally." Fed. R. Civ. P. 9(b); *see Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328 (Fed. Cir. 2009). In accordance with Rule 9(b), claims of inequitable conduct must include the "who, what, when, where and how of the material misrepresentations or omission committed before the PTO." *Id.* at 1328-29. "At the pleading stage the proponent of the inequitable conduct theory need only plead facts supporting a reasonable inference that a specific individual knew of the misrepresentation and had the specific intent to deceive the PTO." *Id.*

In addition to the facts contained in SemiLEDs' original inequitable conduct pleading, SemiLEDs included additional facts in its amended pleading identifying the specific claims of the '459 patent that would have been rejected, the specific portions of the withheld adverse PTO decisions that would have been used to reject the claims, and the duty owed by prosecuting attorney Philip Summa to disclose the withheld material decisions. These additional facts more than satisfy the *Exergen* pleading standard, and Cree's Motion improperly attempts to address the merits of SemiLEDs' inequitable conduct claim. These arguments are premature in the context of Rule 12(b)(6), and Cree's Renewed Motion to Dismiss must be denied.

I. **SemiLEDs Satsified the *Exergen* Pleading Standard, Including the Intent Requirement**

Cree's Motion rests entirely on the intent requirement for pleading inequitable conduct and is based on a strained reading of the MPEP. Because Cree has not argued that SemiLEDs did not meet the who, what, when, where, and how requirements of *Exergen*, and cannot do so in its Reply, SemiLEDs will only address the intent requirement of *Exergen*. When

the intent requirement is analyzed under a correct reading of the MPEP and prosecuting attorney Summa's actions as described in SemiLEDs' Amended Answer, Cree's argument falls apart.

Rule 9(b) allows for the scienter element of an inequitable conduct claim to be pled generally. *Exergen*, 575 F.3d at 1327. It also allows for pleading on "information and belief" because "essential information lies uniquely within another party's control." *Id.* at 1330. Facts must be pled that lead to a reasonable inference of scienter, including knowledge of the withheld material information and specific intent to deceive the Patent Office. *Therasense*, 649 F.3d at 1290; *Exergen*, 575 F.3d at 1330. However, "[b]ecause direct evidence of intent to deceive is rare, a district court may infer intent from indirect and circumstantial evidence." *Therasense*, 649 F.3d at 1290. At the pleading stage, deceptive intent need not be the single most reasonable inference drawn from the evidence. *Johnson Outdoors Inc. v. Navico, Inc.*, No. 2:10-cv-67, 2011 WL 798478, at *8 (M.D. Ala. Mar. 2, 2011) (distinguishing evaluating an inequitable conduct claim at the pleading stage with a trial on the merits). It simply must be a plausible inference from the facts as alleged. *Id.*

Cree misapplies the Rule 9(b) pleading standard and sets forth a strained interpretation of the MPEP in an attempt to substantiate Mr. Summa's decision to not disclose the adverse material office actions to the examiner of the '459 patent. Rule 9(b), however, permits the intent portion of a claim for inequitable conduct to be pled as a reasonable inference. Cree argues that the Court should accept as true Cree's assumption that Mr. Summa somehow relied on the exact same portions of the MPEP that Cree cites in its moving papers (which are not dispositive for the reasons set forth below). But that argument turns the motion to dismiss standard on its head. On a Rule 12(b)(6) motion like this one, the Court must assume as true the facts set forth by SemiLEDs, *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009), and SemiLEDs has

9

alleged facts that support a reasonable inference that Mr. Summa acted with intent to mislead the Patent Office. *See supra* at 3; *infra* at 10-16. Accordingly, SemiLEDs has satisfied the intent requirement of Rule 9(b) and Cree's Renewed Motion to Dismiss must be denied.

## II.   Mr. Summa Had a Duty to Submit All Material Information

As the prosecuting attorney for the '459 patent, Mr. Summa had a continuing duty to submit all material information. MPEP § 2001 states that "[e]ach individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section." The MPEP specifically extends this duty to any "*information* within their knowledge as to other copending United States applications which are 'material to patentability' of the application in question." MPEP § 2001.06(b). Moreover, simply citing the existence of the copending application does not fulfill a prosecuting attorney's duty of disclosure. *See Onstar, LLC v. Micral, Inc.*, No. 1:08-CV-2047, 2010 U.S. Dist. LEXIS 34072, at *24 (N.D. Ohio Apr. 7, 2010) ("Citing to another application, however, does not satisfy an individual's duty of candor to the Patent Office."). Because the '965 application and the '459 patent were copending (i.e., being prosecuted concurrently), Mr. Summa had an affirmative duty to disclose the material adverse office actions from the '965 application to the examiner of the '459 patent. Mr. Summa failed that duty.

### A.   Cree's Arguments Against § 2001.06(b) Misstate the Rule

Cree provides two arguments for why MPEP § 2001.06(b) allegedly does not apply to the current case: (1) the '965 application and the '459 patent were not copending applications; and (2) § 2001.06(b) only required Mr. Summa to notify the examiner of the '459

10

patent that the '965 application existed. D.I. 178, Renewed Motion to Dismiss, at 7-8. Both arguments are factually and legally wrong.

The '965 application and the '459 patent were copending applications from April 22, 2005 to February 5, 2010. Indeed, to qualify as a continuation-in-part application, the '459 patent *was required* to be copending at least one day during the lifetime of the parent '965 application. MPEP § 201.08. Although many continuation and continuation-in-part applications only remain copending for this short one-day period, the '965 application and the '459 patent remained copending for nearly 5 years. Thus, these applications were within the purview of MPEP § 2001.06(b).

The sole case Cree cites to support its position related to a continuation-in-part application that was **not** copending during the relevant timeframe (i.e., the period of alleged inequitable conduct).³ *See Bone Care Int'l LLC v. Pentech Pharm, Inc.*, No. 08-cv-1083, 2010 WL 4102264, at *3 (N.D. Ill. Oct. 6, 2010); U.S. Pat. Nos. 5,602,116 (filed on April 3, 1995) and 5,403,831 (filed on Sep. 10, 1993 and issued on April 4, 1995). The patent-in-suit in *Bone Care*, the '116 patent, was copending for exactly 1 day with its parent, the '831 patent and was assigned to the same examiner. Therefore, in that case, § 2001.06(b) did not apply during prosecution of the '116 patent because it was not copending during prosecution of the '831 patent. Here, in contrast, the '459 patent was copending with the '965 application during its *entire* prosecution. Mr. Summa, therefore, had a duty to inform the examiner of the '459 patent of all "information … as to other copending United States applications" that was material to the

---

³ In an attempt to manufacture additional support for its position, Cree states that "courts have declined to apply MPEP § 2001.06(b) to continuation applications such as these." D.I. 178, at 7. First, Cree cites to only **one** court to support its position. Second, as discussed *supra*, *Bone Care* did not involve copending continuation applications. Accordingly, Cree has not identified any authority that supports its position.

11

prosecution. MPEP § 2001.06(b). As pled in SemiLEDs' counterclaim (without any challenge from Cree), the adverse office actions from the '965 application were but-for material. Accordingly, Mr. Summa was required to disclose them to the examiner of the '459 patent.

Cree also attempts to distinguish § 2001.06(b) by relegating its relevant text to a footnote while pulling other language out of context. D.I. 178, Renewed Motion to Dismiss, at 8, n 3. Cree alleges that § 2001.06(b) only required Mr. Summa to disclose the existence of the '965 application. *Id.* at 8. That is incorrect. Section 2001.06(b) states:

> The individuals covered by 37 CFR 1.56 have a duty to bring to the attention of the examiner, or other Office official involved with the examination of a particular application, ***information within their knowledge as to other copending United States applications*** which are "material to patentability" of the application in question.

(emphasis added). This section refers to information related to other copending applications, not merely the existence of these applications. The Federal Circuit confirmed this requirement in *McKesson*, and it has been applied in subsequent cases at the district court level. Indeed, the Court in *McKesson* held that the MPEP and controlling Federal Circuit law "plainly impose a duty of disclosure beyond citation of the co-pending application." *McKesson Information Solutions, Inc. v. Bridge Med., Inc.*, 487 F.3d 897, 919 (Fed. Cir. 2007); *see also Onstar, LLC*, U.S. Dist. LEXIS 34072, at n.6 ("[T]he Manual of Patent Examination and Procedure as well as federal law plainly imposed a duty of disclosure beyond citation of the co-pending application."). Because adverse office actions are "information" from a copending application, and may represent inconsistent positions taken with respect to two related applications, Mr. Summa was required to disclose them to the examiner of the '459 patent. *See Golden Valley Microwave Foods v. Weaver Popcorn Co.*, 837 F. Supp. 1444, 1474 (N.D. Ind. 1992) ("An applicant's failure to advise the patent examiner of an inconsistent position taken during a prior Patent Office proceeding and whether such failure to advise 'might have been motivated - in part at

12

least - by the applicant's hope that this nugget of information would not surface during the patent examiner's required study' is relevant to the issue of whether inequitable conduct was committed."). Cree's argument to the contrary is contradicted by the plain language of the rule and controlling law.

### B. Cree's Reliance on §§ 609 and 707 is Misplaced

Cree's reliance on Sections 609.02 and 707.05 is misplaced because those sections expressly apply to the citation of *prior art references*, and do not cover disclosure of adverse office actions. *See* § 609.02 ("When filing a continuing application that claims benefit under 35 U.S.C. 120 to a parent … it will not be necessary for the applicant to submit an information disclosure statement in the continuing application *that lists the prior art* cited by the examiner in the parent application."); § 707.05 (In all continuation and continuation-in-part applications, the parent applications *should be reviewed for pertinent prior art*.") (emphasis added). These sections do nothing to absolve a prosecuting attorney's duty of citing adverse office actions from a copending related application.

Sections 609.02 and 707.05 also fail to contain any requirement for an examiner to "actively monitor" the filing of a copending application. Cree has pulled this new duty for examiners out of thin air without any support from caselaw or the MPEP.[4] The MPEP directly contradicts Cree's position, and instead, informs applicants that they *may not* rely on the examiner to remember past applications he has examined, let alone monitor applications not even

---

[4] MPEP § 609.02 specifically refers to the time of filing the continuation application at which the examiner will consider prior art cited in a parent application. Rather than indicating a continuing duty for the examiner to monitor a parent application, § 609.02 notifies applicants that the examiner will only consider prior art "which has been considered by the Patent Office in the parent application" at the time of filing the continuation application.

13

before him. MPEP § 2004, ¶ 9.[5] This is especially true when a different examiner is assigned to the child case and cannot have any recollection of a case that was never before him. Mr. Summa was not entitled to rely on the '459 examiner to figure out the inconsistent positions taken with respect to the '965 application, but was required to specifically bring such information from the '965 prosecution to the attention of the '459 examiner. Sections 609.02 and 707.05 do not demonstrate otherwise.

Contrary to Cree's assertion, there is no controlling Federal Circuit caselaw holding that a prosecuting attorney has no duty to submit material adverse office actions from a copending related application. *See* D.I. 178, Renewed Motion to Dismiss, at 7. The primary case Cree relies upon, *ADT Corp. v. Lydall, Inc.*, does not even relate to the submission of, let alone establish that there is no duty to submit, adverse office actions from parent applications. 159 F.3d 534, 546-47 (Fed. Cir. 1998). In *ADT*, the defendant alleged inequitable conduct for failing to cite a prior art reference of record in the parent application and for failing to disclose prosecution records for the corresponding foreign PCT application. *Id.* at 547. The Federal Circuit first found that MPEP § 609 does not require an applicant to submit a *prior art reference* from the parent application. *Id.* It also found that for *international search reports*, it is only the references that are material, not the application of those references. *Id.* Therefore, because it was related to a foreign prosecution, the applicant was not required to submit the foreign prosecution records. *Id.* Cree's attempt to stretch the holding of *ADT* is telling. The Court in

---

[5]  Section 2004 states, "It is desirable to be particularly careful that prior art or other information in one application is cited to the examiner in other applications to which it would be material. Do not assume that an examiner will necessarily remember, when examining a particular application, other applications which the examiner is examining, or has examined . 'A lapse on the part of the examiner does not excuse the applicant.' *KangaROOS U.S.A., Inc. v. Caldor, Inc.*, 778 F.2d 1571, 1576, 228 USPQ 32, 35 (Fed. Cir. 1985)."

14

that case specifically limited its holding to prior art references and foreign search reports. The fact that the Federal Circuit in *ADT* made a distinction between foreign prosecution decisions and USPTO prosecution decisions, supports SemiLEDs' position and undermines Cree's argument. Indeed, the Federal Circuit strengthened and reaffirmed this distinction in *McKesson*, where it specifically found that adverse office actions from copending related U.S. applications must be cited to the examiner. 487 F.3d at 919.

Cree's reliance on two unpublished district court decisions fares no better. First, both cases cited by Cree, *eBay* and *Sprint*, relied on the Federal Circuit's ruling in *ADT* that ***prior art references*** from a parent application need not be resubmitted in a child case.[6] D.I. 178, *citing eBay Inc. v. IDT Corp.*, No. 08-cv-4015, 2009 WL 2706395, at *3 (W.D. Ark. Aug. 24, 2009); *Sprint Commc'ns Co. v. Nuvox Commc'ns, Inc.*, No. 08-2047, 2009 WL 86565, at *2-3 (D. Kan. Jan 12, 2009). Further compounding the problem, the district court in *Sprint* then proclaimed that § 609 is not limited to prior art references in an IDS, but it failed to provide even a single supporting Federal Circuit case, district court case, or MPEP citation for support. *Sprint*, 2009 WL 86565, at *3. The district court in *eBay* announced the same position, but its only citation was to the unsupported statement from the *Sprint* case. *eBay Inc.*, 2009 WL 2706395, at *3.

A Federal Circuit case that explicitly distinguishes itself from the facts of this case, and stray comments from two district court cases that fail to cite any supporting authority, cannot trump the plain language of § 2001.06(b) of the MPEP and the Federal Circuit's decision in *McKesson*. Cree rests its entire argument on sections Sections 609.02 and 707.05 of the

---

[6] Cree also cites to *Bone Care Int'l, LLC v. Pentach Pharm., Inc.*, 741 F. Supp. 2d 854 (N.D. Ill. 2010), and *Wyeth v. Sandoz, Inc.*, 570 F. Supp. 2d 815 (E.D.N.C. 2008). *Bone Care* is irrelevant for at least the reasons discussed earlier in that the applications at issue were not copending. *Wyeth* is irrelevant because the Court relied on PTO procedures from 1997, but the '459 patent was not filed until 2005.

MPEP, but those sections fail to support Mr. Summa's decision not to submit material adverse decisions from a copending related application to the examiner of the '459 patent. SemiLEDs has properly and adequately pled the who, what, when, where, and how requirements of *Exergen*, and has established a reasonable inference that Mr. Summa withheld adverse office actions with the intent to deceive the Patent Office. Accordingly, Cree's Renewed Motion to Dismiss should be denied.

## CONCLUSION

For the foregoing reasons, Cree's Renewed Motion To Dismiss Defendants' Inequitable Conduct Counterclaim And Affirmative Defense should be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com

*Attorneys for Defendants*

OF COUNSEL:

G. Hopkins Guy III
Michael F. Heafey
Jacob M. Heath
ORRICK, HERRINGTON & SUTCLIFF LLP
1000 Marsh Road
Menlo Park, CA 94025
(650) 614-7400

Sten A. Jensen
ORRICK, HERRINGTON & SUTCLIFF LLP
1152 15th Street, NW
Washington DC 20005
(202) 339-8400

February 3, 2012

5226204.1

**CERTIFICATE OF SERVICE**

I hereby certify that on February 3, 2012, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused to be served copies of the foregoing document on February 3, 2012, upon the following in the manner indicated:

| | |
|---|---|
| Frederick L. Cottrell, III, Esquire<br>Anne Shea Gaza, Esquire<br>RICHARDS, LAYTON & FINGER, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, DE  19801 | *VIA ELECTRONIC MAIL* |
| William F. Lee, Esquire<br>Cynthia D. Vreeland, Esquire<br>WILMER CUTLER PICKERING HALE AND DORR LLP<br>60 State Street<br>Boston, MA  02109 | *VIA ELECTRONIC MAIL* |
| Heath A. Brooks, Esquire<br>WILMER CUTLER PICKERING HALE AND DORR LLP<br>1801 Pennsylvania Avenue, NW<br>Washington, DC  20006 | *VIA ELECTRONIC MAIL* |
| Lynne A. Borchers, Esquire<br>MYERS BIGEL<br>4140 Parklake Avenue, Suite 600<br>Raleigh, NC  27612 | *VIA ELECTRONIC MAIL* |

*/s/ Rodger D. Smith II*

Rodger D. Smith II (#3778)