# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| CREE, INC., | § | |
| | § | |
| Plaintiff, | § | C.A. No. 10-866-RGA |
| | § | |
| v. | § | |
| | § | |
| SEMILEDS CORPORATION, HELIOS | § | |
| CREW CORP., and SEMILEDS | § | |
| OPTOELECTRONICS CO., LTD, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS RENEWED MOTION TO DISMISS DEFENDANTS' INEQUITABLE CONDUCT COUNTERCLAIM AND AFFIRMATIVE DEFENSE

OF COUNSEL:

William F. Lee
Cynthia D. Vreeland
WILMER CUTLER PICKERING HALE
AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

Heath A. Brooks
WILMER CUTLER PICKERING HALE
AND DORR LLP
1801 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6000

Lynne A. Borchers
MYERS BIGEL
4140 Parklake Ave., Suite 600
Raleigh, NC 27612
(919) 854-1400

Dated: February 13, 2012

Frederick L. Cottrell, III (#2555)
Laura D. Hatcher (#5098)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
902 N. King Street
Wilmington, Delaware 19801
(302) 651-7700
Cottrell@rlf.com
Hatcher@rlf.com

*Attorneys for Plaintiff Cree Inc.*

# TABLE OF CONTENTS

I.     INTRODUCTION ....................................................................................................1

II.    PROSECUTION OF THE '965 APPLICATION AND '459 PATENT .............................2

III.   ARGUMENT .........................................................................................................4

      A.    Defendants Cannot State a Claim or Assert an Affirmative Defense of Inequitable Conduct Because There Was No Duty to Resubmit Information Considered During Prosecution of the '965 Application ...........................................................4

      B.    Defendants Also Have Failed to Adequately Plead Intent......................................9

IV.   CONCLUSION....................................................................................................10

RLF1 5826089v. 1

# TABLE OF AUTHORITIES

<u>Federal Cases</u>

*Advanced Respiratory, Inc. v. Electromed, Inc.*,
   No. 00-2646, 2002 U.S. Dist. LEXIS 20351 (D. Minn. Oct. 22, 2002) ..................................... 7

*ATD Corp. v. Lydall, Inc.*,
   159 F.3d 534 (Fed. Cir. 1998)....................................................................................................... 5

*Bone Care Int'l, LLC v. Pentech Pharm., Inc.*,
   741 F. Supp. 2d 854 (N.D. Ill. 2010) ............................................................................................ 5

*eBay Inc. v. IDT Corp.*,
   No. 08-cv-4015, 2009 WL 2706395 (W.D. Ark. Aug. 24, 2009)............................................ 5, 8

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
   575 F.3d 1312 (Fed. Cir. 2009)............................................................................................... 9, 10

*Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co.*,
   837 F. Supp. 1444 (N.D. Ind. 1992) ............................................................................................. 8

*Intex Recreation Corp. v. Team Worldwide Corp.*,
   390 F. Supp. 2d 21 (D.D.C. 2005)............................................................................................ 7, 9

*King Auto., Inc. v. Speedy Muffler King, Inc.*,
   667 F.2d 1008 (CCPA 1981) ................................................................................................. 9, 10

*McKesson Info. Solutions, Inc. v. Bridge Med., Inc.*,
   487 F.3d 897 (Fed. Cir. 2007)....................................................................................................... 7

*Onstar, LLC v. Micral, Inc.*,
   No. 1:08-cv-2047, 2010 U.S. Dist. LEXIS 34072 (N.D. Ohio Apr. 7, 2010) ........................... 8

*Sprint Commc'ns Co. v. Nuvox Commc'ns, Inc.*,
   No. 08-2047, 2009 WL 86565 (D. Kan. Jan. 12, 2009)........................................................... 5, 9

*Therasense, Inc. v. Becton, Dickinson & Co.*,
   649 F.3d 1276 (Fed. Cir. 2011)..................................................................................................... 2

*Wyeth v. Sandoz, Inc.*,
   570 F. Supp. 2d 815 (E.D.N.C. 2008)........................................................................................... 6

## I.      INTRODUCTION

The question before the Court is whether a patent applicant can commit inequitable conduct when the allegedly material information withheld from the Patent Office was already available to the Patent Office in a "parent" patent application.  Courts have universally found no inequitable conduct under these and similar circumstances.

Based on the rules set forth in the Patent Office's Manual of Patent Examining Procedure ("MPEP"), the Federal Circuit and numerous district courts have held there is *no duty* to resubmit information – including prior art, office actions and rejections – considered in a "parent" application when prosecuting a continuation-in-part or "child" patent.  Defendants' opposition brief (D.I. 188 ("Def's Br.")) ignores this law and relies instead on cases in which the applications at issue were prosecuted over the same time period (i.e., were co-pending), but had *no family relationship*.  These cases are completely distinguishable from the facts here.  Indeed, the case law is clear that, in the context of co-pending patents *that are related as parent and child*, an Examiner maintains his affirmative duty to review the file history of the "parent" application during prosecution of the "child" patent.  Courts have consistently held that it is not inequitable conduct not to resubmit during prosecution of the child patent information that was considered in the parent application.

In addition, because there is no duty to resubmit information from the "parent" application during prosecution of a "child" patent, Defendants also have not sufficiently alleged that prosecuting attorney Summa had the requisite intent to deceive the Patent Office.  In fact, the only reasonable inference under the facts alleged is that, without a duty to disclose, Mr. Summa could have *no intent to deceive the PTO* by an alleged non-disclosure.  Indeed, Defendants' allegations of inequitable conduct are of the exact type of "overplayed" "common

litigation tactic" criticized by the Federal Circuit in *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1289 (Fed. Cir. 2011). Accordingly, the Court should grant Cree's renewed motion and dismiss Defendants' Eighth Defense and Third Counterclaim for inequitable conduct with prejudice.

## II. PROSECUTION OF THE '965 APPLICATION AND '459 PATENT

Although not relevant to this motion, which raises purely legal issues, Defendants' suggestion that prosecuting attorney Phillip Summa misled the U.S. Patent and Trademark Office ("Patent Office") is entirely misplaced. There is simply no basis for any such allegation.

The application that led to the '459 patent was a continuation-in-part of the '965 application. (*See* D.I. 1 [Complaint] at Ex. 1 ['459 patent] (listing Application No. 11/037,965 in "Related U.S. Application Data" on cover of patent). Although the two applications share overlapping specifications, they focus on different inventions, and the '965 application had significantly different claims. The '459 claims focus on LED chips that have an area *greater* than 100,000 square microns and that have specified radiant flux characteristics. The '965 claims, in contrast, focused on LED chips that have an area *less than* 100,000 square microns and that have specified forward voltage and radiant flux characteristics. (*See* Def's Br. at 4, Table 1).

As the cover page of the '459 patent indisputably confirms, the Patent Examiner responsible for this patent considered more than one hundred prior art references, *including* the "Slater reference" and other prior art references that were the focus of the adverse decisions during the prosecution of the parent '965 application. (*See* D.I. 1 [Complaint] at Ex. 1 ['459 patent] at 1-2 (listing prior art considered by the Patent Office in "U.S. Patent Documents," "Foreign Patent Documents" and "Other Publications")). The Patent Examiner also was aware

that the '459 patent was a continuation-in-part of the earlier '965 application. (*See id.* at Ex. 1 ['459 patent] at 1 (identifying '965 application in "Related U.S. Application Data")). The Patent Examiner accordingly had the opportunity to review the relevant prior art references himself, and to compare them to the '459 claims. The Patent Examiner made exactly that comparison, and found that Cree was entitled to the '459 patent.[1]

Finally, the Patent Office's decision to grant SemiLEDs' recent request for reexamination, and to issue an initial rejection of the '459 claims, is hardly surprising. As the Patent Office's internal statistics confirm, requests for reexamination are routinely granted in more than 90% of cases. Cree has submitted a response to this rejection, supported by the declaration of an expert in the field, Dr. Russell Dupuis of the Georgia Institute of Technology. As Cree's response and Dr. Dupuis' declaration confirm, the Slater reference highlighted in SemiLEDs' opposition (also a Cree application) was directed to an earlier series of Cree LED chips, the XB series of chips, which did *not* have areas greater than 100,000 square microns, and did *not* meet the radiant flux characteristics specified in the '459 patent. Moreover, the Slater reference actually cautioned that the chips' efficiency "may not be maintained" if the area of the chips were increased. (*See* Ex. 1, [Patent Owner's Supplemental Response to First Office Action Pursuant to 37 C.F.R. 1.945(B) (filed Oct. 25, 2011)] at 14-16.)[2]

---

[1]  Defendants' reference to the '365 divisional application is irrelevant. (Def's Br. at 5-6.) The '365 rejection occurred *after* the '459 patent was granted, and thus could not have been disclosed during the '459 prosecution.

[2]  All exhibits referenced herein are appended to the Declaration of Ryann M. Muir, filed contemporaneously herewith.

## III.    ARGUMENT

### A.    Defendants Cannot State a Claim or Assert an Affirmative Defense of Inequitable Conduct Because There Was No Duty to Resubmit Information Considered During Prosecution of the '965 Application

Defendants' opposition brief does not cite a *single* case supporting their argument that prosecuting attorney Summa had a duty to resubmit information from the '965 "parent" application during prosecution of the '459 "child" patent, while basically ignoring the numerous Cree cases that hold the very opposite. Defendants resort to manufacturing distinctions in the case law where there are none, mischaracterizing Cree's arguments from its opening brief, and ignoring the fundamental rationale from the MPEP regarding disclosure requirements.

### 1.    MPEP § 609 Created an Affirmative Duty on the '459 Examiner to Review the '965 Rejections and Explicitly Exempted Mr. Summa from Any Duty to Resubmit Rejections That Were Already Part of the '965 "Parent" Prosecution History

The fundamental flaw in Defendants' opposition brief is that Defendants fail to acknowledge the familial relationship between the '965 "parent" application and '459 "child" patent. But it is this very relationship that controls the disclosure requirements under the MPEP. *See* MPEP § 609 (D.I. 179 [Declaration to Cree's Opening Br.] at Ex. 2). To overcome the long line of cases supporting Cree's position, SemiLEDs attempts to distinguish an Examiner's obligation under MPEP § 609 to review *prior art* from a parent application with his obligation to review *rejections* from a parent application. (Def's Br. at 14-15). However, the controlling Federal Circuit case law, the numerous district court opinions on this issue, and MPEP § 609 itself make no such distinction.

MPEP § 609, which governs how any material information should be submitted to the Patent Office, provides that the Examiner "will consider *information* which has been considered by the Office in the parent application," and that such "*information* need not be resubmitted in

- 4 -

the continuing application unless the applicant desires the information to be printed on the patent." MPEP § 609.02(A)(2) (emphasis added). Nowhere does MPEP § 609 limit this "information" to prior art. Indeed, contrary to its argument that "information" in § 609 is limited to "prior art references" (Def's Br. at 13), SemiLEDs affirmatively argues that the term "information" in MPEP § 2001 includes adverse office actions. (*See* Def's Br. at 10 (arguing that MPEP § 2001,06(b)'s duty to disclose "information" means a duty to disclose "adverse office actions")).[3]

Likewise, in *ATD*, the Federal Circuit held that "[i]n view of § 609 it can not be inequitable conduct for an applicant not to resubmit, in the divisional application, the ***information*** that was cited or submitted in the parent application." *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 547 (Fed. Cir. 1998) (emphasis added). While the subject of the disclosure in *ATD* happened to be prior art, courts from numerous districts have been explicit that MPEP § 609 requires Examiners to review ***all information*** from the prosecution history of related applications, including the "***rejections that are part of the file history of the parent application***," and that there is no duty to resubmit such information from a parent application in a later child application. D.I. 179 [Declaration to Cree's Opening Br.] at Ex. 3, *eBay Inc. v. IDT Corp.*, No. 08-cv-4015, 2009 WL 2706395, at *3 (W.D. Ark. Aug. 24, 2009) (emphasis added); *see also*, *Bone Care Int'l, LLC v. Pentech Pharm., Inc.*, 741 F. Supp. 2d 854, 862 (N.D. Ill. 2010) ("The M.P.E.P. provides clear guidance that ***examiners reviewing continuation applications should review ancestor applications . . . .***") (emphasis added); D.I. 179 [Declaration to Cree's Opening Br.] at Ex. 4, *Sprint Commc'ns Co. v. Nuvox Commc'ns, Inc.*, No. 08-2047, 2009 WL 86565, at

---

[3]     Of course, as Cree has made clear in its briefing, MPEP § 609 explicitly exempts child applications from § 2001's duty to disclose "material information" when that "information" was part of the parent application.

*2-3 (D. Kan. Jan. 12, 2009) (finding no inequitable conduct when applicant did not highlight differences between the "parent" and continuation application because "M.P.E.P. § 609 is not limited merely to the PTO's consideration of prior art, but encompasses all information previously before the PTO in the prosecution of the parent application."); *Wyeth v. Sandoz, Inc.*, 570 F. Supp. 2d 815, 827 (E.D.N.C. 2008) ("PTO practice at the time [1997] required patent examiners to review the prosecution history of related applications.").

Indeed, Courts have consistently found that § 609 applies in circumstances identical to those here.  Not surprisingly, in its opposition brief SemiLEDs hardly even addresses Cree's main argument regarding MPEP § 609 and summarily discounts the Federal Circuit and numerous district court cases that squarely address the duty of disclosure in the context of related parent-child applications.  (Def's Br. at 14-15).  In fact, SemiLEDs has cited ***no case*** limiting the application of § 609 or suggesting that rejections from the parent application are excluded from the "information … considered by the Office in a parent application."  *See* MPEP § 609.

### 2. SemiLEDs Mischaracterizes Cree's Argument Regarding MPEP § 2001

Rather than acknowledge the Examiner's obligation under MPEP § 609 to monitor the parent file history during prosecution of the child application – and the explicit statement in this provision that such "***information need not be resubmitted in the continuing application***" – Defendants rely on a strained reading of MPEP § 2001 that is both inconsistent with the case law and wholly mischaracterizes the position and arguments Cree set forth in its opening brief. According to SemiLEDs, Cree allegedly argued that MPEP § 2001 should not apply in this case because "the '965 application and the '459 patent were not co-pending applications."  (Def's Br. at 10).  But Cree made no such claim.

While Cree does not dispute that the '965 application and '459 patent were at one time

co-pending, the case law makes clear that MPEP § 2001 does not apply to parent-child applications, whether co-pending or not. That is, MPEP § 609 – and not § 2001 – dictates the disclosure requirements for parent-child applications, ***even when the parent-child applications are co-pending***. *See, e.g.*, *Intex Recreation Corp. v. Team Worldwide Corp.*, 390 F. Supp. 2d 21, 25-26 (D.D.C. 2005) (discussing U.S. Patent Nos. 6,703,469, filed on March 5, 2001, and 6,332,760, filed on April 4, 2000 and issued on December 25, 2001) (citing to *ATD* and MPEP § 609, the Court held there was no duty to resubmit information already disclosed during prosecution of the co-pending, parent patent); Ex. 6, *Advanced Respiratory, Inc. v. Electromed, Inc.*, No. 00-2646, 2002 U.S. Dist. LEXIS 20351, at *11 (D. Minn. Oct. 22, 2002) (discussing U.S. Patent Nos. 6,036,662, filed on March 16, 1998, and 5,769,797, filed on June 11, 1996 and issued on June 23, 1998) (citing to *ATD* and MPEP § 609, the Court held there was no inequitable conduct when the applicant did not resubmit information cited during prosecution of the co-pending, parent application).[4]  Indeed, whether the applications at issue have a parent-child or otherwise familial relationship is the ***only factor*** courts consider in determining whether § 609 controls.

Not surprisingly, every single case SemiLEDs cites to support its position regarding MPEP § 2001 (Def's Br. at 10-12) involves disclosure of information from a co-pending application ***not related by family to the patent-in-suit*** (a point which even SemiLEDs does not dispute.) *See McKesson Info. Solutions, Inc. v. Bridge Med., Inc.*, 487 F.3d 897, 919-20 (Fed. Cir. 2007) (involving co-pending application claiming subject matter similar to the patent-in-suit,

---

[4]     For the Court's convenience, Cree has attached as Exs. 2 - 5 the patents referenced in the *Intex* and *Advanced Respiratory* cases.

but *not related* by family to the patent-in-suit)[5]; *Onstar, LLC v. Micral, Inc.*, No. 1:08-cv-2047, 2010 U.S. Dist. LEXIS 34072, at *16 (N.D. Ohio Apr. 7, 2010) (involving non-disclosure of information from an *unrelated* application containing identical claims as those in the patent-in-suit); *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co.*, 837 F. Supp. 1444, 1447 (N.D. Ind. 1992) (involving non-disclosure of patent application claiming invention similar to patent-in-suit, but *unrelated* by family to patent-in-suit).

The fundamental holding from the case law is clear – when applications are co-pending *but not related*, MPEP § 2001 requires material information from the co-pending application to be disclosed. Indeed, an Examiner would be hard-pressed to learn what material information has come to light in one of the potentially countless, *unrelated* patent applications covering the same or similar subject matter. For this reason, MPEP § 2001 places the burden on the applicant to submit any known material information from non-familial, co-pending applications to the Examiner. With related parent-child applications, however, the Examiner already knows about the parent application(s). In this context, MPEP § 609 controls and properly places the burden on the Examiner to evaluate all the information in the parent application.

Accordingly, in light of the controlling case law and relevant MPEP sections on this issue, prosecuting attorney Summa had no duty to resubmit the rejections from the '965 "parent" application during prosecution of the '459 "child" patent. Without this duty, Mr. Summa could not have committed inequitable conduct by allegedly failing to resubmit information known to be considered by the '459 Examiner. *See, e.g.*, *EBay Inc.*, 2009 WL 2706395, at *3 ("it is *not inequitable conduct* for an applicant not to resubmit information that is already before the PTO

---

[5]     SemiLEDs attempts to blur the distinction between related and co-pending patents by referring to the applications at issue in *McKesson* as "related" (Def's Br. at 15), but they are not "related" in any way that matters here; they are merely co-pending applications addressing similar inventions.

in the parent application" and thus the "*counterclaim of inequitable conduct must fail as a matter of law*") (emphasis added); *Sprint Commc'ns Co.*, 2009 WL 86565, at *3 (when the "inequitable conduct counterclaim is based solely on an alleged failure to disclose information already available to and considered by the PTO in the parent and continuation applications ... the alleged non-disclosures *cannot support a claim for inequitable conduct as a matter of law*") (emphasis added); *Intex*, 390 F. Supp. 2d at 26 (finding that because there was no duty to resubmit information already disclosed in the application for the parent patent, applicant "did not breach its duty of 'candor, good faith, and honesty,' and plaintiff's *inequitable conduct claim therefore fails as a matter of law*." (internal quotation omitted) (emphasis added). Thus SemiLEDs cannot prevail on its counterclaim of inequitable conduct or its affirmative defense as a matter of law.

## B.    Defendants Also Have Failed to Adequately Plead Intent

Defendants' amended inequitable conduct allegations also fail for the further reason that they have not sufficiently plead that Mr. Summa withheld the allegedly material '965 rejections with a specific intent to deceive the Patent Office, as they admit they must. (Def's Br. at 8-10.)[6] As the Federal Circuit made clear, a pleading of inequitable conduct must include allegations of *sufficient underlying facts* from which a court can *reasonably infer* a specific intent to deceive the Patent Office. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327-28 (Fed. Cir. 2009). To illustrate this point, *Exergen* discussed a trademark case, *King Auto., Inc. v. Speedy Muffler King, Inc.*, 667 F.2d 1008 (CCPA 1981), where the court found that the pleading failed to sufficiently allege an "intent to deceive" because "appellant's conclusory statement that [the

---

[6]    Defendants suggest – incorrectly – that the motion to dismiss "rests entirely on intent." (Def's Br. at 8). To the contrary, Cree claims *both* that Mr. Summa had no duty to disclose the rejection of the '965 claims (Pl's Br. at 4-8), *and* that Defendants have not adequately plead intent (Pl's Br. at 9).

- 9 -

registrant] *knew* its declaration to be untrue is not supported by a pleading of any facts which reflect [the registrant's] *belief* that the respective uses of [the marks] would be likely to confuse." *Exergen*, 575 F.3d at 1328 (quoting *King*, 667, F.2d at 1011). Therefore, a pleading does not support a reasonable inference of specific intent to deceive unless it alleges facts from which a court could reasonably infer that the individual accused of inequitable conduct believed he was *wrongfully withholding* information from the Patent Office (i.e. that the individual *knew* that the information was material and *should have been disclosed*.) *Exergen*, 575 F.3d at 1328.

Although SemiLEDs' pleadings may give rise to an inference that Mr. Summa knew of the '965 "parent" rejections, SemiLEDs has not alleged any underlying facts to support an inference that Mr. Summa believed those rejections should have been resubmitted during prosecution of the "child" patent. Given that MPEP §§ 609 and 707.05(b) require the Examiner to monitor the parent file history during prosecution of the child application (*see* D.I. 178 [Plf's Opening Br.] at 4-7), the only reasonable inference from the pleadings is that Mr. Summa had *no intent* to deceive the Patent Office because the '459 Examiner already had an affirmative and independent obligation to review the '965 rejections himself. Thus, the only reasonable inference under the facts alleged is that without a duty to disclose, Mr. Summa would have *no intent* to deceive the Patent Office by his alleged non-disclosure. Accordingly, Defendants have not sufficiently pled a specific intent to deceive.

## IV.    CONCLUSION

For the foregoing reasons and those set forth in its opening brief, Cree respectively requests this Court grant its Renewed Motion to Dismiss Defendants' Inequitable Conduct Counterclaim and Affirmative Defense, and dismiss Defendants' Eighth Defense and Third Counterclaim with prejudice.

RLF1 5826089v. 1

OF COUNSEL:

William F. Lee
Cynthia D. Vreeland
WILMER CUTLER PICKERING HALE
AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

Heath A. Brooks
WILMER CUTLER PICKERING HALE
AND DORR LLP
1801 Pennsylvania Avenue NW
Washington, DC  20006
(202) 663-6000

Lynne A. Borchers
MYERS BIGEL
4140 Parklake Ave., Suite 600
Raleigh, NC  27612
(919) 854-1400

Dated: February 13, 2012

/s/ Laura D. Hatcher
Frederick L. Cottrell, III (#2555)
Laura D. Hatcher (#5098)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
902 N. King Street
Wilmington, Delaware  19801
(302) 651-7700
Cottrell@rlf.com
Hatcher@rlf.com


*Attorneys for Plaintiff Cree Inc.*

RLF1 5826089v. 1

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2012, I caused to be served by electronic mail copies

of the foregoing document and electronically filed the same with the Clerk of Court using

CM/ECF which will send notification of such filing(s) to the following:

Rodger D. Smith, II
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899-1347
rsmith@mnat.com

William H. Wright
Orrick, Herrington & Sutcliffe LLP
777 South Figueroa Street
Suite 3200
Los Angeles, CA 90017
wwright@orrick.com

Steven J. Routh
Sten A. Jensen
Orrick, Herrington & Sutcliffe LLP
1152 15th Street, NW
Washington DC 20005
srouth@orrick.com
sjensen@orrick.com

*/s/ Laura D. Hatcher*
Laura D. Hatcher (#5098)
hatcher@rlf.com